UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BARBRA MASTERS, and all like parties,[1]

                Plaintiff,

   - against -

RYAN MACK; SAMANTHA SURDI; LISA
D'AGOSTINO; SHAPIRO & D'AGOSTINO
P.C.; TARA DIAMOND; FEE AND KALOS,
PLLC; TARA GORE; ERIC TEITEL;
MARSHA GREENBERG; ARIEL CHESLER;
MATTHEW F. COOPER; BARBARA
KAPNICK; DAVID FRIEDMAN; PETER
MOULTON; MARTIN SHULMAN;
BAHAATI PITT; SALLIE MANZANET-
DANIELS; ANGELA M. MAZZARELLI;
JULIO RODRIGUEZ III; ANTHONY
CANNATARO; and LAWRENCE K. MARKS,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6582 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Barbra Masters filed the instant *pro se* Complaint on October 28, 2022. (Compl., Dkt. 1.) Plaintiff's request to proceed *in forma pauperis* is granted. (Dkt. 2.) For the reasons set forth below, the Complaint is dismissed, and Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to submit an amended complaint.

---

[1] Plaintiff purports to bring this lawsuit on behalf of "all like parties." (Dkt. 1, at ECF[2] 1.) However, as a *pro se* litigant, she may not represent any other individuals or be a class representative. "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *see also Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) ("[I]t is well established that a *pro se* class representative cannot adequately represent the interests of other class members.") (internal citation and quotation marks omitted).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

# BACKGROUND[3]

## I. State Court Custody Dispute

This action stems from an ongoing child custody dispute between Plaintiff and her ex-husband, Defendant Ryan Mack, in the New York State courts. Plaintiff and Defendant Mack married in 2002 and divorced in 2015. (Compl., Dkt. 1, at ECF 17.) After their divorce, Plaintiff had full physical custody of their child, J.M., and Mack was granted visitation. (*Id.*) Mack challenged this arrangement in 2019, when J.M. was 14, filing two orders to show cause ("OTSC") in New York State Supreme Court. (*Id.* at ECF 18.) Mack alleged that Plaintiff was preventing J.M. from attending family therapy sessions and obstructing his visitation rights. (*Id.* at ECF 20.) The case was heard by Defendant New York Supreme Court Justice Matthew F. Cooper. (*Id.*) Plaintiff alleges that Justice Cooper "*immediately* overturned this Plaintiff's full physical custody rights and gave [temporary custody] to Ryan Mack. This[]change was based solely on Ryan Mack's unsubstantiated claims that were not only unconvincing, but do not meet any standard of 'unfit parent.'" (*Id.*)

On August 18, 2020, Justice Cooper "awarded sole legal custody for decision making regarding mental health services of the minor child" to Mack. (*Id.* at ECF 123–24.) A September 18, 2020 Order extended Mack's "temporary legal custody over medical decision-making for the child . . . until further order of the court," "so that the child may receive therapy," and directed Plaintiff to "participate in a comprehensive mental health evaluation." (*Id*. at ECF 118–21.) On September 29, 2020, the court entered an Order appointing a psychiatrist to complete a mental

---

[3] The Court assumes the parties' familiarity with the underlying allegations of this case and, therefore, only recites the facts relevant to this Memorandum and Order.

2

health evaluation of Plaintiff.[4]  (*Id.* at ECF 29, 122.)  After a series of delays and evaluator reassignments, Defendant Eric Teitel was ultimately asked to complete Plaintiff's court-ordered mental health evaluation in March 2021.  (*Id.* at ECF 29.)

In the intervening years, Plaintiff has unsuccessfully sought to regain full custody of J.M.  (*Id.* at ECF 25 ("[I]t has been 35 months since my initial parental rights were removed by the court[.]").)  Plaintiff asserts that "[t]his federal case is not about custody of a child" because Defendants refused to award Plaintiff custody in the intervening years and J.M. is going to "age out" before any "corrective measures on the custody matters" can be taken.[5]  (*Id.* at ECF 17 n.1.)  Rather, Plaintiff is bringing claims against the participants of the state court custody proceedings, and, *inter alia*, seeking monetary damages from them, for acting "in concert" to "unconstitutionally interfere[] with [Plaintiff's] fundamental right to make decisions concerning the care, custody, and control of [her] child."  (*Id.* at ECF 11.)

## II.  Defendants

Plaintiff names 20 Defendants in all.  (*See id.* at ECF 12–14.)  Thirteen Defendants are judges or former judges in the New York State court system ("Judicial Defendants") and seven are private individuals ("Private Defendants").[6]  (*Id.*)  All Defendants are allegedly involved with violating Plaintiff's constitutional rights during the state court custody proceedings.  (*Id.*)

---

[4] Plaintiff asserts that Justice Cooper believes she is "mentally unstable[.]" (Compl., Dkt. 1, at ECF 27.)

[5] J.M. turned 18 in 2022. (Compl., Dkt. 1, at ECF 76.)

[6] Judicial Defendants: Matthew F. Cooper, Ariel Chesler, Barbra Kapnick, David Friedman, Peter Moulton, Martin Shulman, Bahaati Pitt, Sallie Manzanet-Daniels, Angela M. Mazzarelli, Lizbeth Gonzalez, Julio Rodriguez III, Anthony Cannataro, and Lawrence K. Marks. (Compl., Dkt. 1, at ECF 13–14.)

Private Defendants: Ryan Mack (Plaintiff's ex-husband); Lisa D'Agostino and Samantha Surdi (Defendant Mack's attorneys); Tara Diamond (Attorney of the Child, or the AFC, for J.M.);

### III.  Plaintiff's Claims

Plaintiff alleges violations of her rights under the Fifth, Sixth, and Fourteenth Amendments and asserts the jurisdiction of this Court pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  (*Id.* at ECF 11, 14–15.)  She also cites provisions of the United States Code related to disability and racial discrimination in public accommodations and federally funded programs, 29 U.S.C. § 794 and 42 U.S.C. § 2000a-1, *et seq*. and § 2000d-1, *et seq*.  (Compl., Dkt. 1, at ECF 11, 14.)  She further asserts supplemental jurisdiction over state law claims that include "slander, libel, inequitable application of State statutory rules, and malpractice[.]"  (*Id*. at ECF 11.)  She seeks declaratory and injunctive relief, including "a judicial declaration" that the named judicial Defendants' "actions, policies, and practices as alleged herein are unlawful and such practices may not continue."  (*Id*. at ECF 39–40.)  She seeks "a declaration that the Appeals Judges immediately remove or publicly correct the unsubstantiated defamatory claims they made about this Plaintiff."  (*Id*. at ECF 40.)  She also seeks unspecified compensatory and punitive damages.  (*Id*.)

Specifically, Plaintiff brings 11 claims against Defendants for alleged unconstitutional actions during the state court custody proceedings:

1. Defendants "obstruct[ed] and den[ied] Plaintiff's right to evidence";

2. Defendants did not show Plaintiff to be an "unfit parent by clear and convincing evidence";

3. Defendants deprived Plaintiff's rights and made public claims regarding Plaintiff's criminal behavior "based on allegations that [did not] meet [the] definition[] of 'child abuse'";

4. Defendants deprived Plaintiff's rights and made public claims regarding Plaintiff's criminal behavior "without citation of the nature and cause of the accusation";

5. Defendants deprived Plaintiff's rights and made "claims of [her] criminal behavior without trial or 'evidentiary hearing'";

---

Tara Gore (Child Protective Specialist at New York City Administration of Children's Services ("ACS"); Eric D. Teitel (psychiatrist); and Marsha Greenberg (therapist).  (*Id*. at ECF 11–13.)

6. Defendants accused Plaintiff of having a "nebulous mental illness"—which was "discriminatory and violate[d] [her] civil rights";

7. Defendants "[o]rdered [a] 'mental health evaluation'" under "color of law" to "delay due process and fabricate evidence";

8. Defendants deprived Plaintiff "of rights without legal representation and refused [her] the right to be in attendance";

9. Defendants deprived Plaintiff "of rights while obstructing available avenues to obtain legal representation";

10. Defendants engaged in "[i]nequitable, [d]e [f]acto termination of parental rights" including "refusal to write [judicial] orders";

11. Defendants engaged "[i]n gross negligence [and the] 'private' [Attorney of the Child] and 'experts' act[ed] criminally with no oversight or legal legitimacy."

(*Id.* at ECF 9–11.) Although Plaintiff does not always make clear which claims are being asserted against which Defendants, the Court has liberally construed her allegations, to the extent possible, in the below analysis to determine which claims Plaintiff asserts against which Defendants.

### A.     Claim 1: Defendants' Obstruction of Plaintiff's Right to Evidence[7]

Plaintiff asserts that the Judicial Defendants have prevented her from submitting "highly pertinent evidence," including "indisputable evidence" that Defendant Teitel was biased against her and Defendant Surdi lied in court. (*Id.* at ECF 20.) Plaintiff also claims that no Defendant has "submitted a single piece of evidence against [her]." (*Id.*)

### B.     Claim 2: Plaintiff Was Not Shown to be Unfit by Clear and Convincing Evidence

Plaintiff asserts in the Complaint that "without a single piece of evidence submitted by any defendant, the federal standard of clear and convincing evidence can not [sic] have been met." (*Id.*) Thus, Plaintiff alleges that Defendants have stripped her of "full physical custody rights"

---

[7] The Court is only summarizing Plaintiff's claims in this Background Section. Thus, the headings in this Section do not reflect the Court's views on the merits of Plaintiff's claims.

5

without showing by "clear and convincing evidence" that she meets the "standard of [an] 'unfit parent.'" (*Id.*)

### C.   Claim 3: Defendants' Allegations Do Not Meet "Child Abuse" Definitions

Plaintiff alleges that "all Defendants chose to engage in a collective character ass[assi]nation of" Plaintiff in front of J.M. (*Id.* at ECF 23.) And specifically, that the Private Defendants made "unsubstantiated, known-to-be-false" statements about Plaintiff during the state court proceedings. (*Id.*)

### D.   Claim 4: Defendants' Allegations Do Not Cite Nature and Causes of Accusations

Plaintiff alleges that all Defendants have made "claims of criminal [child abuse]" against her but that these claims "remain nebulous and oscillate . . . without any evidence that abuse occurred." (*Id.* at ECF 24.) Thus, Plaintiff alleges that she has been deprived of her rights without details of the charge, making it "impossible to defend [herself]." (*Id.*)

### E.   Claim 5: Plaintiff's Rights Deprived Without Trial or "Evidentiary Hearing"

Plaintiff argues that New York law requires that a trial be held "[with]in days" after the removal of "significant parental rights" but that her rights were removed 35 months ago and trial has not yet been held. (*Id.* at ECF 25.)

Plaintiff further claims that she was deprived of custody without an evidentiary hearing even though New York law requires that "all Judges must hold evidentiary hearings before any custodial changes." (*Id.* at ECF 25 n.4 (citing *S.L. v. J.R.*, 56 N.E.3d 193 (N.Y. 2016)).)

### F.   Claim 6: Plaintiff's Court-Ordered Mental Health Evaluation Was Discriminatory

Plaintiff alleges that all Defendants acted in concert to remove her "legal rights as a parent . . . on the basis of mental illness and on [her] sex." (*Id.* at ECF 26.) Specifically, Plaintiff asserts that the "alleged state of [her] mental health by [Justice] Matthew F. Cooper is the basis of the

6

continued removal of my rights as a parent" and that "[a]lleging mental illness is a well-recognized sexist mechanism for discrediting and silencing a woman." (*Id.* at ECF 26–27.)

### G. Claim 7: Plaintiff's Court-Ordered Mental Health Evaluation Was Intended to Obstruct and Delay Due Process and Fabricate Evidence

Plaintiff also alleges that all Defendants unnecessarily delayed the custody proceedings "to wait for the 'opinion' of the alleged 'expert' [Defendant] Eric Teitel" regarding her mental health. (*Id.* at ECF 28.) And that when Defendant Teitel finally gave his opinion regarding Plaintiff's mental health, he provided a "defamatory custody recommendation" advising that her "physical custody rights be removed" and that she "only be granted supervised visits." (*Id.* at ECF 31.)

### H. Claims 8 and 9: Plaintiff's Rights Were Deprived Without Legal Representation

Plaintiff alleges that she did not have legal representation at various times during the custody proceedings. (*Id.* at ECF 31–32.) Plaintiff also alleges that "[t]he First Department denied [her] Poor Person request with no explanation." (*Id.* at ECF 33.) Plaintiff appears to allege these claims against the Judicial Defendants. (*Id.* at ECF 31–32 ("The First Department Appellate Court w[as] notified [that] my constitutionally protected rights were removed . . . without legal representation multiple time[s] [and] without me present . . . . [Justice] Matthew F. Cooper did not offer me legal counsel in the subsequent September[]2020 appearance. Instead, he *further* stripped me of my legal rights; again without counsel.").)

### I. Claim 10: Judicial Defendants Refused to Write Orders and J.M.'S AFC[8] Was Unethical

Plaintiff alleges that "[a]ll judges acted under color of law, to justify their biased and protracted removal of [her custody] rights." (*Id.* at ECF 33.) And that specifically, the Judicial

---

[8] As previously mentioned, "AFC" refers to Attorney of the Child.

Defendants are "[u]sing unwritten decisions and 'temporary' orders to conduct a de-facto [sic] involuntary termination of [her] constitutionally protected parental rights without requisite due process." (*Id.*)

Plaintiff also alleges that Defendant Diamond, J.M.'s AFC, "unethically switched from roles as witness, investigator, mental health professional, guardian, social worker and more." (*Id.*)

### J. Claim 11: J.M.'s AFC and State Court Mental Health Experts Acted Criminally with No Oversight or Legal Legitimacy

Lastly, Plaintiff asserts that the "acts of all Defendants have been enabled by gross negligence by [New York State's] court system." (*Id.* at ECF 35.) Specifically, "a rampant number of cases" in the New York State court system "are conducted with assigned 'private' AFCs and 'experts' [who are] routinely acting outside important rules and regulatory protections, and without legitimate oversight"—including in her own case. (*Id.* at ECF 37 ("This case is illustrative of the scale of these issues: Marsha Greenberg was performing 'expert' services in what could be classified as a felony act[.]") (bullet points omitted).)

## LEGAL STANDARDS

In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021). It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read Plaintiff's *pro se* Complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as

8

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Moreover, the party bringing the action must demonstrate that the court has subject matter jurisdiction over the action. "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); s*ee also* Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

### I. Section 1983 Claims

The Court understands Plaintiff to be raising claims under the Fifth, Sixth, and Fourteenth Amendments related to her liberty interest in raising her child and her access to the state courts. *See* U.S. Const. amends. V, VI, XIV. A plaintiff may bring claims for violations of constitutional rights under 42 U.S.C. § 1983, which provides redress for the deprivation of civil rights. Here, Plaintiff brings Section 1983 claims against both the Judicial Defendants and Private Defendants. However, it is well established that Section 1983 claims cannot be brought against either type of Defendants.

#### A. The Judicial Defendants Are Not Subject to Section 1983

Under Section 1983, plaintiffs may only bring a cause of action against persons "acting 'under color of state law'" to recover money damages for deprivation of their federal or constitutional rights. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). "A state employee acting in his official capacity is acting under color of state

9

law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (internal citation and quotation marks omitted). However, despite being employed by the State, state court judges cannot be sued under Section 1983:

> To the extent [a plaintiff] seeks monetary relief against [a] state judge in his official capacity, [his] claims fail because [a judge] is not a 'person' within the meaning of § 1983. . . To the extent [a plaintiff] seeks monetary relief against the state judge in his individual capacity, [his] claims fail because [the judge] is protected by judicial immunity.

*Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017) (citations and quotation marks omitted).

Here, Plaintiff alleges Section 1983 claims against 13 judges or former judges of the New York State court system in their official capacities. (*See* Compl., Dkt. 1, at ECF 11 ("Plaintiff alleges Matthew F. Cooper, Judge Ariel Chesler, Appeals Judges, Article 78 Judges, and Executive Officers have applied the law inequitably.").) Her 1983 claims thus fail because judges acting in their official capacities are not "persons" within the meaning of Section 1983. *See Cinotti*, 709 F. App'x at 41.[9] Thus, all of Plaintiff's claims against the Judicial Defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### B. The Private Defendants Are Not Liable Under Section 1983

Similarly, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotation marks omitted). Although the under-color-of-state-law requirement can be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function" or performs conduct that is "fairly attributable to the state," these exceptions are narrow. *Id.* at 51–52, 55–58.

---

[9] And, as noted, even if Plaintiff had sought to sue the Judicial Defendants in their individual capacities, those claims would also fail based on judicial immunity.

10

Here, Plaintiff fails to show how any of the Private Defendants acted under color of state law. Mack is Plaintiff's ex-husband and adversary in the state court proceeding. (Compl., Dkt. 1, at ECF 17.) But private parties' "mere use, and even misuse, of the state courts does not turn [them] into state actors." *Koziol v. King*, No. 14-CV-946 (GLS) (TWD), 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (citation omitted). Surdi and D'Agostino are Mack's private attorneys in the custody proceedings. (Compl., Dkt. 1, at ECF 27; *see also id.* at ECF 75.) However, "[i]t is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt,* No. 11-CV-5430 (KAM) (LB), 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases). Diamond is a private attorney, appointed by the state court as J.M.'s AFC. (*Id.* at ECF 33; *see also id.* at ECF 159.). But Diamond is not a state actor because "although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd,* 485 F. App'x 500 (2d Cir. 2012). Lastly, Teitel is a private psychiatrist and Greenberg is a private therapist. (Compl., Dkt. 1, at ECF 12.) Yet, neither Teitel nor Greenberg can be held liable for their witness testimony in the custody proceedings because "[t]he common law doctrine of absolute witness immunity shields witnesses from civil rights claims." *Elmasri v. England*, 111 F. Supp. 2d 212, 222 (E.D.N.Y. 2000) (citation omitted). Such witness immunity extends to "all persons, whether governmental, expert, or lay witnesses" and applies "irrespective of the truthfulness of [the witness's] testimony." *Peterkin v. Carr*, No. 20-CV-524 (LDH) (LB), 2020 WL 7186796, at *3 (E.D.N.Y. Dec. 7, 2020) (citations and quotation marks omitted); *see also Falco v. Santoro*, No. 18-CV-2480 (JS) (GRB), 2018 WL 6706312, at *4 n.4 (E.D.N.Y. Dec. 19,

11

2018) (noting that "insofar as Plaintiff seeks to impose Section 1983 liability on the court-appointed attorneys for the children in the Matrimonial Action, as well as court-appointed psychologist and caseworkers, such individuals do not act under color of law and are immune from suit under the doctrine of absolute witness immunity" (collecting cases)). Thus, Plaintiff has not plausibly alleged that any of the Private Defendants acted under color of state law.

To be sure, private parties can be liable under Section 1983 if they "willfully collaborated with an official state actor in the deprivation of the federal right[.]" *Yapi v. Kondratyeva*, 340 F. App'x 683, 684 (2d Cir. 2009) (quoting *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)). To succeed on a Section 1983 conspiracy claim, a plaintiff must prove: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Conclusory allegations that a private person acted in concert with a state actor are insufficient to maintain a conspiracy claim under Section 1983. *See id*.

Here, Plaintiff asserts that Defendants acted "in concert to violate Plaintiff's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution[.]" (Compl., Dkt. 1, at ECF 11.) However, Plaintiff asserts no facts showing that any of the Private Defendants agreed to act in concert with any of the Judicial Defendants to inflict an unconstitutional injury on Plaintiff. Plaintiff's conclusory assertions of in-concert activity by Defendants are plainly insufficient. Accordingly, Plaintiff's Section 1983 claims against the Private Defendants are also dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.      Remaining Federal Claims**

Plaintiff's remaining federal claims are dismissed for failure to state a claim. First, Plaintiff makes the conclusory statement that this Court has jurisdiction pursuant to 42 U.S.C. § 1985. (Compl., Dkt. 1, at ECF 14.) Section 1985 pertains to conspiracies to interfere with an individual's constitutional rights. *See* 42 U.S.C. § 1985(1)–(3) ("If two or more persons in any State or Territory conspire . . . ."). To assert a conspiracy under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (internal citation and quotation marks omitted). Plaintiff repeatedly alleges that Defendants acted "in concert" to violate her constitutional rights. (*See, e.g.*, Compl., Dkt. 1, at ECF 11–13, 17.) However, as discussed, Plaintiff fails to plead any facts to support her allegations that Defendants were acting "in concert." Thus, Plaintiff's Section 1985 claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citation omitted).

Second, Plaintiff also cites 42 U.S.C. § 1981, 29 U.S.C. § 794, 42 U.S.C. § 2000a-1, *et seq.*, and 42 U.S.C. § 2000d-1, *et seq.*, as the bases for this Court's jurisdiction.[10] (*See* Compl., Dkt. 1, at ECF 14.) However, Plaintiff does not assert any facts regarding her race nor does she

---

[10] Section 1981 pertains to an individual's right to "make and enforce contracts" regardless of race. 42 U.S.C. §1981. Section 794 prohibits discrimination based on disability under federal grants and programs. 29 U.SC. § 794. Sections 2000a-1 and 2000d-1 prohibit racial discrimination in public accommodations and federally funded programs. 42 U.S.C. § 2000a-1, *et seq.*; 42 U.S.C. § 2000d-1, *et seq.*

13

claim to have a disability, so her remaining federal claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.  State Law Claims

Finally, Plaintiff asks the Court to exercise supplemental jurisdiction over her state law claims, including "slander, libel, inequitable application of State statutory rules and malpractice[.]" (Compl., Dkt. 1, at ECF 11.)  Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). "Courts consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" in order to decide whether to exercise supplemental jurisdiction." *Id.* at 117–18 (citation and internal quotation marks omitted).  These factors "counsel against hearing state law claims when the federal claims against a party are dismissed at an early stage in the litigation." *Heard v. MTA Metro-N. Commuter R.R. Co.*, No. 02 CIV. 7565 (JGK), 2003 WL 22176008, at *3 (S.D.N.Y. Sept. 22, 2003) (citation omitted).  Thus, the Court declines to exercise supplemental jurisdiction and dismisses Plaintiff's state law claims because all claims over which the Court has original jurisdiction have been dismissed.[11]  28 U.S.C. § 1367(c)(3).

---

[11] Plaintiff's defamation claims against Defendants (*see* Compl., Dkt. 1, at ECF 37) are further dismissed for failure to state a claim because "New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012). "Consequently, a statement made [during] a judicial proceeding is absolutely privileged under New York common law so long as it is considered material and pertinent to the litigation." *Id.* (citing *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010)).  The absolute privilege applies to every step of the judicial proceeding and "attaches to witnesses as well as judges, parties, and attorneys." *D'Annunzio*, 876 F. Supp. 2d at 216–17 (citing *Weitz v. Wagner*, No. 07-CV-1106, 2008 WL 5605669 (ERK) (ETB), at *7 (E.D.N.Y. July 24, 2008)).  Thus, Plaintiff's defamation claims, which are based entirely on statements made in the state court

## CONCLUSION

Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915, solely for purposes of this Order. This case is dismissed because Plaintiff's claims against the Judicial Defendants fail because of judicial immunity, and Plaintiff has failed to state a claim against the Private Defendants. In light of the Court's duty to liberally construe *pro se* complaints, Plaintiff is granted thirty (30) days to file an amended complaint. If Plaintiff elects to file an amended complaint, it must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order: 22-CV-6582 (PKC) (PK).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 27, 2022
       Brooklyn, New York

---

custody case, are further dismissed because the statements are privileged. *See D'Annunzio*, 876 F. Supp. 2d at 216.