RECEIVED IN PRO SE
MAR 27 2023 @ 4:14 PM
VIA BOX.COM

**United States District Court**
**Eastern District of New York**

Civil Docket No.:
CV 22-6582

Barbra Masters

                                        Plaintiff          **Amended Complaint**

                        Vs.

individually and in their official capacity:

Ryan Mack, Tara Diamond, Eric Teitel,
Marsha Greenberg, Lisa D'Agostino,
Samantha Surdi, Esther Cajuste, and Tara
Gore, Matthew F. Cooper, Ariel Chesler,
Barbra Kapnick, David Friedman, Peter
Moulton, Martin Shulman, Bahaati Pitt, Sallie
Manzanet-Daniels, Angela M. Mazzarelli,
Lizbeth González, Martin Shulman, Julio
Rodriguez III; Janet DiFiore, Anthony
Cannataro, Lawrence K Marks, Abigail
Reardon, Robert J. Anello, Jorge Dopico, Jane
Schreiber, Robert Tembeckjian.

1.  Upon information and belief, the Co-Plaintiffs Barbra Masters alleges the following against
    the defendants:

# Index

Index                                                                                            2

Introduction                                                                                     4

Parties                                                                                          5

Jurisdiction                                                                                     7

Exhaustion of Administrative Remedies                                                            8

Justiciability                                                                                   8

Case Summary                                                                                     9

    Background                                                               9

    Unlawful and Fraudulent Intrusion of Courts into Our Lives               10

    ACS's Illegal Behaviors                                                   11

    Blatant Intention to Deny Due Process                                     11

    Inequitable Application of the Law, Gross Negligence, and Deviation from Professional Standards
    Affecting All Parents in NY                                               12

    Custom of Practice Creates Three Classes of Parents                       13

    Custom of Practice's Interacting Spokes Comprise a Blatant and Malicious Conspiracy to Deprive
    Me and Other of Constitutional Rights                                     13

Claims                                                                                          14

    Claim 1: Unnecessary Removal and Intrusion without Establishing Proper Jurisdiction      14

    Claim 2: Obstruction and Denial of Plaintiff's Right to See Evidence      15

    Claim 3: Unnecessary Removal and Intrusion without Probable Cause         16

    Claim 4: Constitutional Rights Removed Ex-Parte and Without Counsel       18

    Claim 5: Unnecessary Removal without Immediate Evidentiary Hearing and No Intent for Trial    21

    Claim 6: Constitutional Rights Removed without Evidence of Unfit Parent   22

    Claim 7: Deprivation of rights and public claims of criminal behavior without citation of the nature
    and cause of the accusation                                               26

    Claim 8: Ignoring and Obstruction of Exculpatory and Material Evidence    27

    Claim 9: Intentional Delay of Due Process                                 29

    Claim 10: Intentional Professional Gross Deviations and Malpractice       32

    CLAIM 11: Forced Invasion of Privacy without Cause                        35

    Claim 12: Discriminatory and Prejudicial Use of Mental Health Evaluations 36

Claim 13: Defendants Work Against Liberty Interests of Parent and Children    38

Claim 14: Fraud in and on the Court    40

Claim 15: Inequitable Application of the Law    42

Claim 16: Gross Negligence and Deviation from Administrative Standards    45

Claim 17: Conspiracy to Interfere with Plaintiff's civil and constitutional rights    53

## Damages    58

## Relief Requested    60

# Introduction

2. This action seeks relief from multiple civil rights and constitutional violations and deprivations of Plaintiff's rights against all Defendants.

3. I seek *injunctive and declaratory relief from judges (and their junior staff) that were acting on the bench in these cases[1]:*

    (a) Lower Court Judges (to be collectively referred to as such going forward) in their personal and official capacity: Defendant Matthew F. Cooper (a now retired New York Supreme Court Judge); and New York Supreme Court Judge Ariel Chesler.

    (b) First Department Appellate Judges (to be collectively referred to as such going forward) their personal and official capacity: Barbra Kapnick, David Friedman, Peter Moulton, Martin Shulman, Bahaati Pitt, Sallie Manzanet-Daniels, Angela M. Mazzarelli, Lizbeth González, Martin Shulman, Julio Rodriguez III.

3. I seek injunctive, declaratory relief and *the money damages[2] only from the remaining other Defendants:*

    (a) Executive Officers from court administration or oversight bodies (to be collectively referred to as Executive Officers going forward) in their personal and official capacity: Janet DiFiore, Anthony Cannataro, Lawrence K Marks, Abigail Reardon, Robert J. Anello, Jorge Dopico, Jane Schreiber, Robert Tembeckjian.

    (b) And all other Defendants in their personal and official capacity: Ryan Mack, Tara Diamond, Esther Cajuste, Eric Teitel, Marsha Greenberg, Lisa D'Agostino, Samantha Surdi, Tara Gore.

4. Plaintiff alleges Defendants acted (either tacitly or overtly) to maliciously violate Plaintiff's rights under the First, Fifth, Eight, Sixth and Fourteenth Amendments of the Constitution of the United States, and several other federal protections; discriminate against the Plaintiff on the basis of sex; and unconstitutionally interfered with my fundamental right to make decisions concerning the care, custody, and control of our child.

5. Plaintiff alleges Defendants conspired (either tacitly or overtly) to deprive me of my rights.

---

[1] I don't seek to challenge Judge Chen's position on the issue of suing bench judges. I respectfully *only* seek injunctive and declaratory relief (not monetary damages) against the Bench judges (the actual but unclear intention in the original complaint). If even this is not allowable, I request that this court a) allow me to move forward against any defendants for which the claims are allowable; and b) identify a means to petition and redress the blatant, unlawful (and kingpin) actions of those defendants for which I am not being allowed to seek relief. I ask this, since a person's privilege of protection when working as a judge (and even lesser the privileges of unethical AFCs and the malpractice of "experts") cannot override my own 1st amendment right to have grievances addressed—a fundamental protection that is being intentionally voided by these defendants as they know they operate under excessive immunity, due to their own and others gross negligence in NY courts system.

I also request clarification and review of certain individuals' immunity (i.e., Judge Ariel Chesler, Esther Cajuste, Matthew F. Cooper, Eric Teitel, Tara Diamond, Lisa D'Agostino, and Samantha Surdi). Given recent limitations placed on even an acting President of the United States's immunity (Case 1:21-cv-00400-APM), these defendants claims to immunity are reasonably called into question in this case, given their fraud in and on the court, invalid jurisdiction, actions done outside their court appointed charge, and the unlawful conspiracy they participated in.

[2] At the very least, nominal money damages should be awarded to denounce and deter similar abuses.

6.  Plaintiff alleges Lower Court Judges, First Department Appellate Judges, and Executive Officers apply law inequitably.

7.  Plaintiff alleges First Department Appellate Judges, and Executive Officers failed to act to prevent a pervasive pattern of deprivations and violations, that they have knowledge of and the power and duty to correct in their system.

8.  Plaintiff also brings claims of slander, libel, inequitable application of State statutory rules, fraud and malpractice pursuant to this Court under supplemental jurisdiction, as they arise out of the same common nucleus of operative fact.

9.  Per the First Amendment, if this court should decline to hear this complaint, it respectfully asked to identify a federal claim that is available for redress of my grievances that overcomes Defendants' intentional manipulation of excessive immunity—as it is proving to be undiscoverable to a pro se litigant—in regards to the blatant and malicious violations of constitutional and federally protected rights by New York bench judges and other named bad actors.

10. Please note, previous exhibits from first filing haven't been repeated; but I do repeat claims supported by those same exhibits in this amended filing.

# Parties

11. Plaintiff, Barbra Masters is an individual who resides at 213 Taaffe Place, Apt 201, Brooklyn NY 11205. 2.

12. Defendant Ryan Mack, individually and in official capacity, is the Plaintiff's ex husband, and resides at 9747 Shore Rd #B1 Brooklyn, New York 11209], Brooklyn, NY.

13. Defendant Matthew F. Cooper, individually and in official capacity, is a retired judge of New York County Supreme Court, and his last known residence is 70 Little West Street Apt 17c, 10280 New York, NY.

14. Defendant Judge Chesler, individually and in official capacity, is a judge of New York County Supreme Court, PART 51, Matrimonial Division, 71 Thomas Street, Courtroom 311, New York, NY 10013.

15. Defendant Tara Diamond, individually and in official capacity, is charged with business of Attorney of the Child (AFC) and is from the law firm The Law Offices of Diamond, Fee and Kalos, PLLC, with its principal place of business in New York, NY: 570 Lexington Avenue, Suite 1600 New York, NY 10022

16. Defendant Eric D. Teitel,  individually and in official capacity, is a psychiatrist with a principal place of business at 234 Tenth Avenue #20060, New York, NY 10011 or New York University Langone 247 West 30th Street, Suite 10R, New York, NY 10001.

17. Defendant Marsha Greenberg, individually and in official capacity, is an individual that has completed a Master of Social Work, and operates illegally unlicensed as "a therapist in private practice in New York City." Her principal place of business is with Discovery Programs at

251 West 100th Street at West End Avenue New York, NY 10025 and at 401 Broadway Suite 2306, New York NY 10013.

18. Defendant Lisa D'Agostino,  individually and in official capacity, is charged with business of Attorney for Ryan Mack, with a principal place of business in Queens, NY. Zelenitz, Shapiro & D'Agostino, P.C., 118-35 Queens Boulevard, Suite 400, Forest Hills, NY 11375.

19. Defendant Samantha Surdi,  individually and in official capacity, is charged with business of an Attorney for Ryan Mack, with a principal place of business in Queens, NY. Zelenitz, Shapiro & D'Agostino, P.C., 118-35 Queens Boulevard, Suite 400, Forest Hills, NY 11375.

20. Defendant,Tara Gore,  individually and in official capacity, is charged with the business of Child Protective Specialist, with a principal place of business in Brooklyn, NY at 12 MetroTech Center, Brooklyn NY, 11201.

21. Defendant Barbra Kapnick,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

22. David Friedman,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

23. Peter Moulton, individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

24. Martin Shulman,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

25. Bahaati Pitt, individually and in official capacity is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

26. Sallie Manzanet-Daniels,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

27. Angela M. Mazzarelli,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

28. Lizbeth González,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

29. Martin Shulman,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

30. Julio Rodriguez III,  individually and in official capacity, is a Judge for the New York Court system, at First Judicial Department Supreme Court of the State of New York, 27 Madison Avenue, New York, NY 10010.

31. Janet DiFiore, individually and in official capacity, was charged with establishing Statewide standards and administrative policies, for the New York Court Office of Court Administration,

which has its principal place of business in Albany: Office of Court Administration, ESP, Suite 2001, Empire State Plaza Albany, NY 12223-1450; and last known personal address of 15 Kensington Rd. Ph 1, Bronxville, NY 10708

32. Anthony Cannataro, individually and in official capacity, is charged with establishing Statewide standards and administrative policies, for the New York Court Office of Court Administration, which has its principal place of business in Albany: Office of Court Administration, ESP, Suite 2001, Empire State Plaza Albany, NY 12223-1450

33. Defendant Lawrence K Marks,  individually and in official capacity, was charged with establishing Statewide standards and administrative policies and with the business of overseeing the day-to-day operation of the Statewide court system, for the New York Court Office of Court Administration, which has its principal place of business in Albany: Office of Court Administration, ESP, Suite 2001, Empire State Plaza Albany, NY 12223-1450; and last known personal address of White Well Dr., Rhinebeck, NY 12572

34. Abigail Reardon, individually and in official capacity, is charged with Chairperson of the First Department Attorney Grievance Committee: First Department Attorney Grievance Committee, 180 Maiden Lane, 17th Floor, New York, NY 10038

35. Robert J. Anello, individually and in official capacity, is charged with Chairperson of the First Department Attorney Grievance Committee: First Department Attorney Grievance Committee, 180 Maiden Lane, 17th Floor, New York, NY 10038

36. Jorge Dopico, individually and in official capacity, is charged with Chief Attorney of the First Department Attorney Grievance Committee: First Department Attorney Grievance Committee, 180 Maiden Lane, 17th Floor, New York, NY 10038

37. Jane Schreiber, individually and in official capacity, is charged with Director of First Department Office of Attorneys for Children Office of Attorneys for Children, 41 Madison Avenue - 39th Floor, New York, NY 10010

38. Robert Tembeckjian, individually and in official capacity, is charged with Administrator & Counsel for NYS Commission on Judicial Conduct: NYS Commission on Judicial Conduct, 61 Broadway, Suite 1200, New York, New York 10006

# Jurisdiction

39. This court has jurisdiction under

    28 U.S. Code § 1443

    28 U.S. Code § 1331 - Federal question

    28 U.S. Code § 1343

    28 U.S. Code § 1367

    42 U.S.C. § 2000

40. as well any other laws and rules that apply to the deprivations and violations detailed in this complaint, and in which I as a Pro Se litigant might not have the legal training and expertise to recognize.

# Exhaustion of Administrative Remedies

41. Plaintiff has exhausted all applicable administrative means reasonably known and available, to correct the collective character assignation and violations of our constitutional and civil rights.

42. This includes demands for trial, Article 78 motions, Appeals, all applicable or allowable complaints respectively with Office of Professional Medical Conduct; ACS Office of Advocacy and respective manager; The Office of Professional Discipline; First Judicial Department Attorney Grievance Committee, Second Judicial Department Attorney Grievance Committees, New York State Commission on Judicial Misconduct, the U.S. Department of Health and Human Services Office for Civil Rights, United States Department of Justice Civil Rights Division, and the American Disability Act's office for NY court.

43. Additional administrative requirements would be an impairment to not service of justice. Defendants' have intentionally acted to subdue Plaintiff with legal lacunae and administrative obstacles, instead of supporting due process as charged. The intentionally caused Pro Se inequities are clear.

# Justiciability

44. This case remains "live" until the libel being conducted by the First Department Appellate Judges against this Plaintiff is corrected.

45. This case remains "live" until the matter that this Plaintiff does not pay the contested fees for Tara Diamond is *equitably placed in written order*. She sends this Plaintiff "unpaid" invoices and has a history of suing parents for AFC fees. Judge Ariel Chesler inequitably refused to place his pedestrian decision in writing or to hear the related important issues of her fraud in the court. The First Department Appellate Court explicitly refused to make him write his order, even as it also determined this Plaintiff did not have to pay the First Department AFC.

46. This case remains "live" until sanctions and damages are equitably heard in regards to the fraud in and on the court conducted by Tara Diamond, Matthew F. Cooper, Judge Chesler, Esther Cajuste, Ryan Mack, Marsha Greenberg, Samantha Surdi, Lisa D'Agostino, and Eric Teitel. Such claims have no statute of limitations.

47. This case remains "live" until the multiple violations and deprivations are identified as unconstitutional and in violation of federal laws, the related slander against me to my daughter is corrected, and the expenses and related damages experienced by this Plaintiff are recognized, and appropriate relief is *equitably* determined and provided.

48. This case remains live as the courts of New York, including the Court Executive Officers, have been notified multiple times of a pattern of inequitable application of the law, constitutional lack of due process and other federal law violations rampant in relevant civil courts in New York. The

inequities and conspiracy actions of the defendants are and will be repeated at great harm for all citizens of New York.

# Case Summary

49. This federal complaint is not a case of custody. While this is the alleged basis for the named Defendants' unlawful acts in the NY state courts, this case is actually about bad actors in the New York court system maliciously depriving this Plaintiff's constitutional rights, through unnecessary State intrusion; repeat violations of due process; inequitable application of law; discrimination; fraud in and on the court; gross deviation from professional standards; gross negligence and intentional disregard; among other violations.

50. Their actions were also taken without the court establishing proper jurisdiction, due to a willful disregard for statutory rules and administrative necessities.

51. Under the misnomer of protection of children, named defendants maliciously participate in (or enable) a custom of practice in which victims of coercive control and other domestic abuse are routinely harassed and terrorized while their fundamental rights are violated, and children who are also victims of abuse are damaged, or worse die.

### ***Background***

52. Defendant Ryan Mack and Plaintiff Barbra Masters were married in October 2002. They had one child, J.M. Ryan Mack and Barbra Masters separated December 2012. During the separation this Plaintiff was the primary caregiver and full physical custodial parent. Our divorce was finalized 2015. The divorce decree grants Plaintiff and Ryan Mack shared legal custody, and this Plaintiff full physical custody with Ryan Mack granted visitation. The physical custody arrangement was made primarily because Ryan Mack had been found sexually grooming our child and had a history of other problematic parenting; had a history of extreme substance abuse; and relatedly was not ever the primary caregiver for our child's education, medical, religion and other factors. This custody arrangement was voluntarily entered into by Ryan Mack because he didn't want to be documented as a "pervert" in court proceedings and related documents.

53. Also pertinent, Ryan Mack's sexual grooming behaviors were reported to ACS by a team of five professionals from the well-regarded Ackerman Institute. Ryan Mack admitted his behaviors to ACS and in writing multiple times (See E1). ACS's response was to a) order parenting classes Ryan Mack never took and they did not enforce; and b) write this Plaintiff a letter stating that if Ryan Mack engaged in such behaviors again I would lose custody of J.M., as they would hold me responsible for his actions (even as I outright agreed his behaviors were extremely problematic, and openly worked with ACS and Ackerman Institute on the matter).

### *Unlawful and Fraudulent Intrusion of Courts into Our Lives*

54. Starting 2019, when J.M. was 14, Ryan Mack (in concert with his lawyers Lisa D'Agostino and Samatha Surdi) filed two orders to show cause (OSC)—seeking significant custodial changes in regards to J.M.—*with no evidence.*

55. In each filing (one in 2019 and one in 2020), *based solely on Ryan Mack*'s *unsubstantiated and refuted claims*, Matthew F. Cooper *immediately removed this Plaintiff's significant custodial right*s of our child J.M., and granted Ryan Mack all he requested—and more; without even an evidentiary hearing.

56. Matthew F. Cooper did so with a shocking indifference
    1. a) that he was *overturning this Plaintiff's constitutionally protected rights without evidence, basic due process or a trial*, and
    2. b) that Ryan Mack is a man with a history of sexual grooming of J.M. (see E1, E2), medical neglect of J.M., an indisputable mental illness, and of lying and coercive control behaviors.

57. Then starting August 2020, in violation of constitutional and civil rights protections, Matthew F. Cooper (and now all other judges listed as defendants), used unsubstantiated allegations of a nebulous mental illness in this Plaintiff—and a related "pending" mental health evaluation—as their unconstitutional justification to obstruct and strip me of legal parental rights for years. They did so again without evidence that I was harm to myself or others, without trial and intentionally ignoring or obstructing the substantial evidence they did have because it runs contrary to Matthew F. Cooper's intentionally false statements.

58. To date, ***not one Defendant named here submitted or respectively compelled to provide a single piece of evidence to support their ever changing false claims made about me. This is despite valid related requests and motions.***

59. Instead, all defendants justify their actions with a case built entirely on a collective hearsay campaign of character assignation, and other defamation against this Plaintiff. This campaign was conducted by Tara Diamond, Ryan Mack, Lisa D'Agostino, Samatha Surdi, Eric Teitel, Marsha Greenberg, Matthew F. Cooper, and Tara Gore. This campaign was maintained by Judge Ariel Chesler and Esther Cajuste.

60. Starting June 30, 2022, the First Department Appeals Judges now join this character assignation campaign, and *publish non-factual defamatory claims* of criminal-in-nature child abuse by this Plaintiff—and they do so while simultaneously admitting their claims are based on unconstitutional decisions that were made without even an evidentiary hearing, and willfully misrepresenting facts of the case.

61. Inequitably and in an intentional violation of multiple constitutional and federal rights, Matthew F. Cooper, Judge Ariel Chesler, and First Department Appellate Judges justified the unnecessarily protracted removal of my rights because it was done with "temporary" orders; even as they refused to write basic decisions because they might favor me, refused to compel evidence, refused to provide any legal justifications, obstructed legal counsel, and outright denied a trial.

62. To obscure lack of basic due process and violations, Matthew F. Cooper, Appeals Judges and Court Executive Officers inappropriately enabled or actively elevated unqualified—and at times even criminal—personal "opinions" of the Attorney for the Child (AFC) Tara Diamond

and alleged "experts" Eric Teitel and Marsha Greenberg, whom conducted unconstitutional "investigations" and "evaluations" that grossly deviate from any professional standard and regulations.

63. Defendants chose to circumvent the State agencies that are charged with such work; instead having these "private" AFCs and "experts" illegitimately perform such work because they know these individuals act without legitimate oversight or accountability.

### *ACS's Illegal Behaviors*

64. Starting in September 2020, ACS opened two additional cases against Ryan Mack. Worker Tara Gore also refuses to follow any statutory rules regarding ACS conduct in these cases. She did not involve me in J.M. care and planning, refused to attempt any reuniting with J.M., refused to provide me with location of my child, and encouraged my child's community to call the police on me if they saw me.

65. Judge Ariel Chesler looks the other way when told. And chose to ignore, what at that point was the blatant and undeniable perjury that Ryan Mack, and his lawyers had been engaging in.

### *Blatant Intention to Deny Due Process*

66. Finally, all defendants indisputably act to delay, obstruct and age out the case, presumably for personal gain, to protect others or to avoid accountability for their own bad acts.

67. For example, Matthew F. Cooper committed fraud upon the court (one of several such acts), when he wrote an order placing the case in abeyance to await his retirement and a "pending" evaluation; an evaluation he knew or should have known that the assigned "expert" was choosing not to complete.

68. Ryan Mack, Samantha Surdi, Lisa D'Agostino and Tara Diamond refused to provide evidence when demanded; and Ryan Mack and his lawyers waited almost 3 years to formally request on record there be no trial for the fraudulent proceedings they initiated.

69. Despite repeat requests and even formal motion for an expedited trial, Judge Ariel Chesler and his law clerk outright denied a trial and obstructed legitimate due process for over 10 months; repeatedly making clearly false statements of "looking into it."

70. Then, October 25, 2022, disingenuously—with less than 60 days remaining for any jurisdiction of the case—Judge Ariel Chesler admits I do not have funds for legal representation. He finally assigns me a lawyer; while still refusing to confirm a trial date, the purpose of next appearance, or to compel requisite evidence that had been demanded over 18 months prior.

71. This disingenuous act was clearly intended to create a retroactive veneer for all Defendants' unconstitutional behaviors; as it was suspiciously timed with a First Department Appellate Court's contempt case against me, for lawyer fees I cannot pay (just one of many "coincidental" timing of actions in this case).

72. Judge Chesler and Esther Cajuste both refused to state what a purpose for the clearly meaningless "hearing" that they were desperately trying to rush in before J.M. turned 18. However, the fact that Esther Cajuste's actions were part of a conspiracy to deprive me of my rights (and even were conducted under color of law), is not deniable. Esther Cajuste, at the

behest of Judge Arial Chesler's courtroom, placed into writing that any expectation of basic due process rights were not to be afforded to me, because they were a "civil" court.

73. And to demonstrate just how unchecked the courts are in New York, in blatant fraud on the court:

    (a) Judge Chesler wrote an order stating unequivocally that I must attend a "hearing" in person.

    (b) He had Esther Cajuste also state in writing unequivocally that my appearance was required, and that if I did not appear I would be deemed "in default;" regardless of the COVID symptoms I was displaying.

    (c) Yet, when I did appear at the courthouse at the time assigned as required by him— with two witnesses and double-masked—he unlawfully had locked the doors of his public courtroom during public hours so I could not enter.

    (d) He then told security to escort me out of the building.

    (e) Before 8:00 am the next morning he had written and filed orders making decisions based on the known-to-be-false statement that I allegedly had not appeared and so he decided the case case on a default.

### _Inequitable Application of the Law, Gross Negligence, and Deviation from Professional Standards Affecting All Parents in NY_

74. Defendants unlawful acts in this case follow a readily identifiable custom of practice for many parents in New York Courts, in which bad acting Judges, AFCs, and "experts" commit fraud in and upon the court, and maliciously conspire with a more privileged parent (and their lawyers) to remove children from parents that are victims of coercive control and domestic violence (and the children themselves are victims), without probable cause, without due process, based on constitutionally inadequate and violating investigations, and unlawfully interfere with same parents' liberty interest in the care and control of their children.

75. In my case, these bad actors follow an additional known, discriminating sub-pattern in this conspiracy, in which they accuse a woman of mental illness, with no evidence and against all evidence and professional opinions that refutes such an illness exists. This is a well known mechanism for discrediting a woman. It serves to distract from the actual abuses my ex-partner is engaging in. And it also serves as a fabrication of evidence, maliciously providing a veneer of legitimacy for Defendants many unconstitutional and unlawful acts.

76. The readily identifiable pattern in the courts I identify is common enough that such acts are a) understood as allowable within their courts; b) have even been sanctioned by authoritative individuals; and c) as such represent an accepted custom of practice in New York courts.

77. **This custom of practice has led to outrageous decisions in which** innocent parents are stripped of parenthood without legitimate probable cause, and **children are isolated with parents that are known to be physically, sexually or psychologically abusive**.

78. **In the worst case scenarios, child abuse and domestic violence victims have died due to illegitimate court actions by abusers in which bad New York courts actors are complicit**.

79. **My child, trapped in this system, lives through same unlawful court proceedings and outcomes, as they suffered abuse, lost potential and are damaged for life.**

80.  And I, trapped in the same system, suffered court-enabled and enacted coercive control, the abuse of watching my child be abused, as I am illegitimately deprived of liberty and pursuit of happiness. As a result I experienced great emotional distress, career and financial losses and stability, housing insecurity and other distress and damages.

### ***Custom of Practice Creates Three Classes of Parents***

81. New York court's custom of practice has created different classes of persons as parents in New York:

> (A) a class of parents when stripped of constitutional rights *by bad actors within New York courts* whom have no legitimate protections in New York State courts;
>
> (B) a class of parents whose constitutional rights when challenged by New York State agencies that can sue these agencies (and have had to) to receive narrow protections; and
>
> (C) a class of parents with enough money, access to social status and privileges, collegial relations with legal professionals, or other standing that they are able to not only protect their rights but take rights not their own (as this case and others know to this Plaintiff illustrate).

82. For those in Class A, bad actors in New York Courts intentionally sidestep or disregard involvement of State agencies (and applicable statutory rules). These agencies can and have been sued in federal courts by parents in Class B, for violations that are fundamentally similar to those presented in my claims.

83. Bad actors in New York Courts instead intentionally rely on "private" evaluators and AFCs to perform substantially the same services as State agencies are charged with providing, since these "private" providers can work without financial caps, legitimate oversight, regulation or adherence to any statutory rules.

### ***Custom of Practice's Interacting Spokes Comprise a Blatant and Malicious Conspiracy to Deprive Me and Other of Constitutional Rights***

84. These bad actors—unethical judges, AFCs and evaluators—conspire to willfully and blatantly violate and deprive others' constitutional rights in an environment independently found to be "ripe for cronyism and corruption."

85. The fact that these three classes of persons exists is enabled by the New York Court's Appellate judges, executive officers and oversight bodies' willful and malicious gross negligence of the lower court judges, AFCs and "experts" that act with illicitly gained impunity.

86. They are enabled in their behavior by a byzantine system of contradictory common law rulings that has created an apparent legal vacuum in which one class of parents is now devoid of constitutional protections.

87. As a result, there is no legitimate-acting body for grievances available to parents in Class A, and the bad actors in New York know they act without legitimate accountable.

88. The sheer number, blatancy, and scale of violations in my State case, as well as the similarity of violations and behaviors between my case and a growing number of other New York State cases that I have knowledge and evidence of supports a claim of conspiracy.

89. And while I am hopeful with this complaint, a federal avenue available to address such serious constitutional grievances is not readily apparent to me, even after great effort.

90. This court is implored to consider the depth of the degradation that currently exists in New York courts, and to identify any path available to be heard.

91. Such abuses should not be minimized or justified to protect bad actors.

92. To allow such bad actors to continue is to allow them to ignore their oath to to serve as neutral arbitrators, and is a harm to the judicial process and integrity of the courts.

93. Most importantly, to ignore defendants' conspiracy to deprive me (and all Class A parents) of rights, and the New York courts intentional gross negligence on this serious matter, is also to ensure abuse (and even more deaths of children) will continue.

# Claims

94. All defendants know or should have known that the following acts presented below are unconstitutional, inequitable, and violate multiple federal and state laws, rules and regulations.

95. All defendants failed to correct or remove themselves from such acts.

96. Please note, the violations and deprivations of my rights in this New York court case were so willful and blatant there are a substantial number listed here. However, this complaint does not even attempt to cover all of violations that occurred.

97. Even with the large number presented, I have selected those claims most pertinent to other parents that fall into Class A, and which best represent the custom of practice currently existing in New York courts. I have evidence and knowledge to support such a claim.

### *Claim 1: Unnecessary Removal and Intrusion without Establishing Proper Jurisdiction*
*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Esther Cajuste, and Lower Court Bench Judges*

98. Defendants asked for, ordered, or upheld "temporary orders" without establishing proper jurisdiction, and as such imposed on my liberties without authority.

99. Ryan Mack, Samantha Surdi and Lisa D'Agostino initiated their fraudulent and frivolous case inappropriately with two blatant case initiation filing errors.

100. Matthew F. Cooper signed off on and proceeded with their case without following proper New York Statutory law and administrative requirements for the establishment of proper jurisdiction.

101. Esther Cajuste and Judge Ariel Chesler failed to correct, or remove themselves, when notified of related administrative errors.

102. All acts committed in this case were done without established jurisdiction and related proper authority.


### Claim 2: Obstruction and Denial of Plaintiff's Right to See Evidence

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Eric Teitel, Marsha Greenberg, Esther Cajuste, Lower Court Bench Judges, and First Department Appellate Judges.*

103. Defendants asked for, ordered, or upheld "temporary orders" without *any* evidence submitted by the Ryan Mack, Marsha Greenberg, Eric Teitel, the AFC, or the state.

104. Defendants denied or obstructed my right to see evidence against me, and in doing so imposed on my liberties.

105. For over three years, Ryan Mack and Tara Diamond (nor any defendant) did not submit a single piece of evidence against me—despite multiple valid motions and verbal requests for proper fact finding and for requisite evidence (see E.

106. All attempts have been ignored, denied or obstructed; with my status as Pro Se used against me. Consider just the following acts:

   (a) Ryan Mack, and his lawyers Samantha Surdi and Lisa D'Agostino refuse to provide evidence, using arguments as illogical as "evidence should be considered discovery" and therefore Ryan Mack should not have to provide evidence.

   (b) Tara Diamond refused with a "procedural posture."

   (c) Matthew F. Cooper and Judge Ariel Chesler, refused to sign pertinent subpoenas, placing me in an inequitable position as Pro Se, and make me unable to present a proper defense.

   (d) Eric Teitel refused to provide the "documents" and a list of "collaterals" he was selectively provided by the court, and which he openly stated was the unscientific basis upon which he was basing a mental health evaluation.

   (e) Marsha Greenberg refused to provide requested documentation when legally required to do so, and instead abruptly quit providing services to J.M. when asked; a child she also alleged was in dire straits.

   (f) Matthew F. Cooper and Judge Ariel Chelsea (and Esther Cajuste was complicit) refused to compel evidence from Tara Diamond, and Ryan Mack despite multiple valid Notices of Discovery and statutory rules.

   (g) Matthew F. Cooper and Judge Ariel Chesler refuse to place any decision in writing on this very significant matter.

(h) The First Department Judges also refuse to sign the pertinent subpoenas; or compel evidence of Ryan Mack and Tara Diamond with no justification.

107. Instead of compelling evidence, and throwing out the case when Ryan Mack and Tara Diamond refused to provide any as statutorily and constitutionally required, Matthew F. Cooper, and Judge Ariel Chesler continued to strip me of my legal rights as a parent, allegedly waiting for an unnecessarily protracted timeframe for the opinion of the alleged "expert" Eric Teitel.

108. Tara Diamond allowed her known-to-be-false hearsay and "opinions" to form the backbone of Matthew F. Cooper's acts. Ryan Mack, Lisa D'Agostino, Samantha Surdi, and Eric Teitel encouraged Tara Diamond's behavior.

109. First Department Judges were notified of such issues. They continued with same violations; and refused their duty to correct.


### Claim 3: Unnecessary Removal and Intrusion without Probable Cause

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste, Lower Court Bench Judges, and First Department Appellate Judges.*

110. Defendants asked for, enabled or engaged in unnecessary seizure, intrusion and deprivation of my rights without substantiated or even *plausible* probable cause, and in doing so illegally imposed on my liberties.

111. Defendants Ryan Mack, Lisa D'Agostino and Samantha Surdi filed motions they knew to be fraudulent and frivolous, and perjurious.

112. In Ryan Mack's frivolous and fraudulent motion, filed December 2019, he:
   (a) alleged I was obstructing his ability to have days he was *not* legally entitled;
   (b) alleged I also stopped him from have his legally allowed visitation with J.M. while admitting in same document, and at the subsequent court appearance, that J.M. was at his home for his ordered visitation at the time he filed; and
   (c) alleged I was refusing family therapy; even as my constant request for over two years —verbally and in motion—was that the court order family therapy from the very highly respected Ackerman Institute or the Family Separation Clinic, or other reputable organization.

113. Based on these frivolous and blatantly contradictory claims, Ryan Mack alleged the only course of action available was to immediately remove J.M. from her primary residence and my care—even as I was her full legal custodial parent and had been her primary care provider her entire life.

114. Without provide a single piece of evidence, Ryan Mack's motion cannot have met any standard of exigent circumstances to justify such immediate state intrusion.

115. And given his claims did not constitute the state's definition of emergency, and were not only frivolous but blatantly contradictory, the case should have been dismissed, as required by state statutory rules and federal standards.

116. Instead Matthew F. Cooper illegally intervened—at great harm to J.M. and deprivation of Plaintiff's rights—and immediately granted Ryan Mack full physical custody of J.M.

117. By August 2020, Ryan Mack's filed a second fraudulent, frivolous and perjurious motion.

118. By this date, I had been de facto stripped of my physical custodial rights for 8 months—with no evidence, no discovery or trial, and not even a written justification. This is despite efforts to have Matthew F Cooper proceed with legitimate procedure.

119. Instead of due process on the first matter and Ryan Mack's original fraudulent and frivolous request heard and decided upon (and the court exiting our lives), Matthew F. Cooper again intervened—at great harm to J.M. and deprivation of Plaintiff's rights—and immediately granted Ryan Mack full custody of J.M.'s "mental health care" (and 30 days later extended the same order using intentionally ambiguous wording that could entirely strip me of all legal rights should Ryan Mack wish to use Matthew F. Cooper's order in that way).

120. Matthew F. Cooper's decision was just as unconstitutional as his first act for multiple reasons, including that without a single piece of evidence, Ryan Mack's motion cannot have met any standard of exigent circumstances to justify such immediate state intrusion.

121. It is fact on record that Matthew F. Cooper's unnecessary and immediate intrusion was not based on evidence. In his own order, he states his decision was based on merely an "alleged cause."

122. Again, Ryan Mack's claims were not only perjurious, frivolous and fraudulent, they did not constitute the state's definition of emergency (greater details of his and Tara Diamond's fraudulent claims provided in Claim 6).

123. Tara Diamond allowed her known-to-be-false hearsay and unqualified "opinions" serve as factual basis for Matthew F. Cooper's acts. Ryan Mack, Lisa D'Agostino, and Samantha Surdi participated and encouraged Tara Diamond's behavior.

124. And the only evidence on record Matthew F. Cooper (and later Judge Ariel Chesler) did have, demonstrably shows Ryan Mack, Tara Diamond and Matthew F. Cooper were lying, an "expert" they allegedly relied upon was performing services illegally, and the Order to Show Cause filed by Ryan Mack was moot due to his own actions (greater details of his and Tara Diamond's fraudulent claims provided in Claim 6 and others).

125. Judge Ariel Chesler and Esther Cajuste were notified that others had engaged in fraud in the court issues. They took no action to correct. Instead they conspired to cover up the acts.

126. Instead of compelling evidence, and declining to hear the case when it presented as at best frivolous, Matthew F. Cooper, and later Judge Ariel Chesler (and Esther Cajuste) continued to strip me of my legal rights as a parent, allegedly waiting for an unnecessarily protracted timeframe for the opinion of the alleged "expert" Eric Teitel.

127. Other defendants willfully participated or gained from such acts.

128. First Department Judges were notified of such issues. They continued with same violations; and refused their duty to correct.

### _Claim 4: Constitutional Rights Removed Ex-Parte and Without Counsel_

_Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste, Lower Court Bench Judges, and First Department Appellate Judges._

129. Matthew F. Cooper and Judge Ariel Chesler maliciously granted premature and prejudicial decisions—removing my constitutionally protected rights— ex-parte, without evidence and without requisite and legitimate opportunity for defense.

130. Matthew F. Cooper maliciously granted the premature and prejudicial decisions without presenting charges, evidence or giving this Plaintiff legitimate indication of when or how restrictions and full rights would be restored.

131. These immediate and unnecessary significant custodial changes followed a custom of practice, in which significant custodial changes were made off-record, without me present, without adequate or proper representation, and often without any requisite documented supporting motion or orders.

132. Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste maliciously participated in these actions.

133. Judge Chesler and First Department Appellate Judges maliciously continued to uphold illegitimate decisions when asked to corrected.

134. Matthew F. Cooper, Judge Ariel Chesler and Esther Cajuste, and First Department Appellate Judges obstructed and denied my right to counsel, even though NY law requires counsel be provided to parents unable to pay if custodial rights are to be removed; and the federal standard requires indigent parents be provided with counsel if complicated expert testimony is to be involved or if there are allegations of neglect of abuse.

135. Matthew F. Cooper, Judge Ariel Chesler and Esther Cajuste, and the First Department Appellate Judges obstructed or ignored the substantial issue that I was denied the right to be present,  acts that constitute fraud on the court.

136. Tara Diamond, Ryan Mack, Samantha Surdi, Lisa D'Agostino, and Esther Cajuste willfully participated in such acts, and personally gained from them.

137.  In December, 2019, my full physical custodial rights were immediately removed at the mere request of Ryan Mack.

138. To do so, Matthew F. Cooper treated Ryan Mack's frivolous 2019 OSC filing as the same thing as an "order;" immediately removing my sole physical custody of child J.M. and granted it to Ryan Mack, without evidence, without a trial and without even an evidentiary hearing.

139. Obviously, without having even been served such papers by this date, it is indisputable that I was not granted the right to present a defense before such a serious decision was granted.

140. And while the signing of Ryan Mack's OSC was presumed by this Plaintiff to only be a granting of Ryan Mack's opportunity to be heard on his fraudulent, frivolous and unsubstantiated Order to Show Cause (and in fact that is also the wording of Ryan Mack's OSC), Judge Ariel Chesler, clarified on May 31, 2022, that this was in fact considered an "order" that had entirely stripped me of all physical custodial rights.

141. With Judge Ariel Chesler position on this "order," it becomes indisputably that my constitutionally protected rights were removed by New York courts without a single piece of evidence, trial or opportunity to provide defense.

142. On August 18, 2020 my legal rights were also removed ex-parte.

143. And the fact that I did not have proper legal representation the day my legal rights were removed is indisputable.

144. On August 11, 2020, I signed a Consent to Change Attorney Form, releasing my lawyer as I had no more funds to pay her (E16);

145. It was served through the NYSCEF system and all parties were notified earlier.

146. On August 13, 2020, Ryan Mack, Samantha Surdi and Lisa D'Agostino filed an Order to Show Cause seeking full legal custody of our child.

147. On August 17, 2020 Matthew F. Cooper heard (in an off-record lawyer only session) in which:
   (a) I did not have any authorized legal representation;
   (b) Matthew F. Cooper denied me even the right to be there myself; and
   (c) there is no record of this event.

148. Yet, August 18, 2020 Matthew F. Cooper signed an order (that has been extended and was then made permanent December 7, 2022) that removed my legal rights as a parent (see Exhibit B); a decision he admits is based merely on "alleged cause."

149. Matthew F. Cooper did not later offer me legal counsel, or hear my request that Ryan Mack pay such fees at the appearance in September, 2020 (an initial request made June 2020, and repeated several times).

150. Instead, he continued the removal and *further* stripped me of legal rights without counsel; a situation that remained for over two years.

151. The First Department Appellate Court were notified my constitutionally protected rights were removed (against NY statutory requirements ) without legal representation multiple time and without me present (E21, line 10).

152. However, the First Department denied me the right to submit relevant evidence (and same evidence that showed Ryan Mack and his counsel were blatantly lying to the Appellate Court).

153. On June 30, 2022, with no factually basis on record, and in denial of relevant evidence of this disputed issue, the Appeals Judges falsely state "the court heard from the parties." Relatedly, they also intentionally mislead to suggest Matthew F. Cooper's significant decision was not made until October 2020.

154. Judge Ariel Chesler and Esther Cajuste also took no legitimate action to resolve this substantial issue, even after they recognized on record I did not have funds to pay counsel.

155. Instead, Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and the First Department Appellate judges obstructed remedies.
   (a) This case was unnecessarily heard in the New York County Supreme Court; a court known to be an inequitable forum for those without financial means. Even though

Ryan Mack and myself reside in Kings County, at no one's request, Matthew F. Cooper stated he would keep the case in New York County Supreme Court.

(b) The First Department Appellate Court ignored my request for a transfer to Kings County Family Court or to a Domestic Violence Court when I notified them I was highly disadvantaged.

(c) Matthew F. Cooper was notified starting as early as June 2020 that I did not have the finances. As early as September 2020, Matthew F. Cooper acknowledges on record I do not have financial means (even making an inequitable assignment of an expert based on this fact).

(d) Matthew F. Cooper and Appellate judges ignored my requests for assistance with legal fees and requests for review of both parties financials (even though it is a statutory requirement).

(e) Finally, May 2022, Judge Ariel Chesler reviewed my Poor Person request and confirmed I did not have the financial means to pay legal fees. In same appearance he notes "you need a lawyer." Yet, he refused to place these decisions in writing (even as I faced related contempt in the First Department Appellate Court for charges for fees he admits I cannot pay).

(f) Judge Ariel Chesler and Esther Cajuste waited a further 5 months to write an order granting me counsel despite requests (conveniently with only 2 months before J.M. would age out).

(g) The First Department Appellate Judges were notified that its lower court Judges were not ruling on this substantial issue.

(h) he First Department Appellate Judges denied my Poor Person request with no explanation. Instead they circuitously allowed its lower court's obstructing behavior on this matter, while also ruling it would follow the lower court's decisions.

156. *That I legally should have been an assigned lawyer, is now fact on record.* On October 25, 2022, I was finally assigned an 18b lawyer (E18).

157. However, this assignment was done disingenuously. The assignment conveniently came the same week contempt charges against me were reviewed by the First Department Appellate Court for legal fees I can not pay (E22). And I was allegedly assigned counsel for a "hearing" they all of a sudden wanted to rush in before the end of the year even though:

(a) The assignment was made with only two months remaining until J.M. was to turn 18;

(b) This assignment was not made until over two years after my legal rights had already been removed;

(c) This assignment was not made until over three years after my physical custodial rights were de facto overturned;

(d) The lawyer they assigned me admits there was no discernible purpose to the hearing and she could not help me with my daughter or clear my name; and

(e) And the lawyer they finally did assign was plausibly conflicted out.

158. And in an additional, ex-parte act, that also constitutes fraud on the court, Judge Ariel Chesler removed all of my rights as a parent on the basis of a known-to-be-false default, that himself, Esther Cajuste, Ryan Mack, Tara Diamond, Samantha Surdi and Lisa D'Agostino participated in.

### *Claim 5: Unnecessary Removal without Immediate Evidentiary Hearing and No Intent for Trial*

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste, Lower Court Bench Judges, First Department Appellate Judges and Executive Officers.*

159. I incorporate all of the other claims and restate for this claim.

160. Matthew F. Cooper and Judge Chesler allowed Ryan Mack and Tara Diamond's malicious requests without probable cause, and conducted unreasonable ex-parte seizure by *immediately* removing our child and similar significant custodial rights using "temporary orders" without providing the *requisite* immediate opportunity to see evidence and present a defense.

161. Under the guise that the removal of my rights were justified because it was done with "temporary orders," Matthew F. Cooper and Judge Chesler continued "temporary" removal of custody for unreasonably protracted time periods without legitimate fact-finding, evidentiary hearings, trials or other requisite due process.

162. They did so in blatant disregard for federal requirements and state statutory guidelines for timely trials and hearings; including the fact that official rules regarding the trial of a custody and visitation case, state proceedings must be concluded within 90 days of commencement (22 NYCRR 205.14).

163. Matthew F. Cooper and Judge Ariel Chesler granted these premature and prejudicial decisions ex-parte, without evidence, and without plausible cause or exigent circumstances, when had *no intention to provide a trial.*

164. The First Department Appellate Judges obstructed or ignored these substantial issues, and maliciously continued to uphold illegitimate decisions when asked to corrected.

165. Executive Officers take no action on the Lower Court Judges, First Department Appellate Judges fraudulent and blatant misconduct.

166. Tara Diamond, Ryan Mack, Samantha Surdi, Lisa D'Agostino. And Esther Cajuste willfully participated in such acts, and personally gained from them.

167. The fact there has been no evidentiary hearing when my rights as a parent were removed is not in dispute. The First Department Appeals Judges clearly state "the court did not err in declining to hold a full evidentiary hearing before awarding the father legal custody."

168. The First Department Appeals Judges inequitably and unconstitutionally assume this position, despite the governing 2016 New York Court of Appeals finding that all Judges must hold evidentiary hearings before any custodial change.

169. All judges also intentionally ignore requests that the decision in regards to my physical custody be placed in writing, and that they cite the evidence to support the decision, as legally required. They also ignore the substantial constitutional issue that Ryan Mack merely had to file an unsubstantiated request for such a significant custodial change to be unnecessarily and immediately granted.

170. That there was no intention to hold a trial also cannot be disputed now.

171. Under statutory rules, Ryan Mack, Lisa D'Agostino, Samantha Sudi and Tara Diamond were required to file for trial dates as early as May 2020.

172. Instead, it was 36 months since my initial parental rights were removed by the court when a final decision was finally made by Judge Ariel Chesler. Yet no trial was scheduled or ever held, even though:

    (a) there had been a three year de facto involuntary termination of this Plaintiff's parental rights;

    (b) the First Department judges makes criminal-in-nature claims against me;

    (c) allegedly Ryan Mack and Tara Diamond also make criminal-in-nature charges but never presented claims or evidence for trial;

    (d) Under matrimonial statutory rules, a trial was required to have been held approximately 29 months prior; and

    (e) Under New York precedence, a trial was required to have been held "in days" after the removal of my significant parental rights with a temporary restraining order.

173. I repeatedly requested that due process begin, charges be formalized, evidence be presented and that a trial be scheduled. Instead in fraudulent acts and acts of conspiracy acts, these requests have been ignored, and obstructed.

174. After such repeat request were ignored, I filed a motion for a trial, attempting to have this important due process right afforded me; I was denied (E6, E7).

175. On June 9, 2022 the First Department Appellate Court was notified Judge Ariel Chesler had denied me a trial. They took no action.

176. In May 2022, Ryan Mack's lawyer Lisa D'Agostino requested there be no trial.

177. Inequitably, Judge Ariel Chesler implied there would be no trial.

178. Esther Cajuste and Judge Ariel Chesler disingeniosly repeatedly stated they are following some opaque priority system for assignment of trial dates, instead of following statutory rules and legal precedent and just assigning a date.

179. Then, December 6, 2022, Judge Ariel Chester, in fraud upon the court, manufactured a scenario to claim I was in default.

180. On his fraudulently manufactured "default" he then stripped illegitimately me of all custodial rights without discovery and without a trial.


### *Claim 6: Constitutional Rights Removed without Evidence of Unfit Parent*

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste, Eric Teitel, Marsha Greenberg, Lower Court Judges, First Department Appellate Judges, and Executive Officers*

181. I incorporate all of the above and restate for this claim.

*182. Obviously, without evidence compelled or submitted by any of the named defendants, the federal standard of clear and convincing evidence can not have been met.*

183. Defendants defamed Plaintiff, and maliciously asked for or supported "temporary orders" without requisite evidence of unfit parent; *or any* evidence submitted by Ryan Mack, the AFC, the state, or court "expert."

184. The First Department Appellate Judges inequitably refuse to enforce the constitutional obligation and state standard for clear and convincing evidence.

185. The First Department Appellate Judges inequitably refuse to enforce their Court of Appeals standard that all Judges must hold evidentiary hearings before any custodial change.

186. Executive Officers take no action on the Lower Court Judges, First Department Appellate Judges, Tara Diamond, Samantha Surdi and Lisa D'Agostino's fraudulent and blatant misconduct (for greater details see Claim 16).

187. In 2019, when J.M. was age 14, Matthew F. Cooper *immediately* overturned this Plaintiff's full physical custody rights and gave them to Ryan Mack.

188. In August 2020 removed Plaintiff's legal rights—without a single piece of evidence.

189. Matthew F. Cooper, Judge Ariel Chesler, the First Department Appellate Judges have refused to place such a significant decision on the physical custody change in writing.

190. And Matthew F. Cooper admits on record that the August 2020 decision was *based merely on "alleged cause;" not clear and convincing evidence I was unfit.*

191. The standard for unfit parent is not subjective. New York translated the Federal unfit parent standard into statutory rules that clearly define what constitutes abuse and what is neglect.

192. Not only is there not *any evidence* submitted by the Defendants, but the claims made known and placed on record against this Plaintiff do not come close to meeting the State's abuse and neglect standards and guidelines placed into law.

193. Matthew F. Cooper, Judge Ariel Chesler and Esther Cajuste made no attempts to follow their law.

194. First Department Appellate Judges made no attempts to uphold their law.

195. Instead of compelling evidence, Matthew F. Cooper, Judge Chesler , Esther Cajuste and First Department Appellate Judges maliciously relied entirely on more than adequately refuted and contested hearsay from AFC Tara Diamond, from alleged "experts" and Ryan Mack, Samantha Surdi and Lisa D'Agostino while ignoring blatant and admitted to perjury, and fraud in and on the court.

196. In addition, the only actual evidence on record demonstrably shows Ryan Mack, Tara Diamond and Matthew F. Cooper are lying, an "expert" relied upon was performing services illegally; and the Order to Show Cause filed by Ryan Mack was moot due to his own actions.

197. Consider the following fraudulent allegations that have been made know to this Plaintiff:

198. <u>Allegation 1: I "interfere" with medical professionals such that our child cannot get medical care</u>

    (a) This is the alleged primary justification for the order that removes my legal rights to our child J.M. by all Judges.

    (b) Ryan Mack, Tara Diamond, Samatha Surdi, and Lisa D'Agostino make this claim even though they know that J.M.'s then psychiatrist stated the exact opposite. J.M.'s

psychiatrist wrote a letter (E25) for all parties involved that clearly states I should remain involved and she had no problems with me.

(c) These defendants also knew that I was attempting to work with Ryan Mack and our child's psychiatrist to find appropriate care.

(d) Tara Diamond, knowing that her claim was false, has continued to repeat it.

(e) Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and First Department Appellate Judges were all were notified; *they all choose to ignore the only actual expert "evidence"* that was available at that time.

(f) In addition, Tara Diamond's oft repeated claim this Plaintiff is "interfering;" also relies upon the "expert" statements made by Marsha Greenberg.

(g) Marsha Greenberg is an "expert" that Tara Diamond and counsel pressured this Plaintiff into using for our then suicidal child.

(h) I later learned, Marsha Greenberg is not legally allowed to practice mental health services in the State of New York. My attempts to discuss this concern with Marsha Greenberg, was punitively framed as "interfering" by Marsha Greenberg to Tara Diamond.

(i) To-date, Tara Diamond repeats Marsha Greenberg's claim even after Tara Diamond was served documents that identify Marsha Greenberg was acting illegally.

(j) Again, Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and First Department Appellate Judges were notified of Marsha Greenberg's criminal in nature behavior.

(k) They choose to ignore.

199. Allegation 2: it was vital our child J.M. remain seeing her then therapist.

(a) Ryan Mack, Samantha Surdi, and Lisa D'Agostino, and Tara Diamond claim this Plaintiff's legal rights as parent needed to be immediately removed (without trial, evidence, etc.) due to our child vitally needing to continue to see her then therapist.

(b) Even though this "alleged" claim did not meet a legal definition of "emergency" or state common law on such a matter, it became Matthew F. Cooper's justification for the premature and immediate intervention of removing my legal rights without a trial.

(c) Even worse, Matthew F. Cooper was notified on multiple occasions that this alleged "emergency" in Ryan Mack's Order to Show Cause did not actually exist, and therefore the OSC and related orders were legally moot:

- During the September 2020 appearance, in which Matthew F. Cooper extended the August 2020 order that removed my legal rights as a parent, Lisa D'Agostino notified the court that the child was not seeing her psychologist.
- Tara Diamond confirmed.
- April 8, 2021, Tara Diamond again confirms for the court that the child is not seeing her then psychologist.
- Same date, Tara Diamond also informed Matthew F. Cooper that Ryan Mack had instead moved J.M. around to three different psychologists by that point—a significant, high-impact care choice that was removed from me without cause.

200. Allegation 3: There are "concerns" about my mental health.

(a) Starting September 2020, Matthew F. Cooper makes a gendered prejudicial claim I am mentally unstable, using known-to-be-false statements he made under oath, zero evidence and the immediate rejection of my claims as a litigant.

    (b) He continued to repeat his prejudicial statement at consecutive appearances while also noting on record that he does not have evidence that I am unsafe.

    (c) Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and the First Department Appellate Judges have used Matthew F. Cooper's unsubstantiated, prejudicial allegation of a nebulous mental illness as the basis to allow or ignore an unnecessarily protracted removal of my legal rights — without proper discovery or trial.

    (d) Eric Teitel outright stated he would not conduct a scientific, objective mental health evaluation, and instead implied that Matthew F. Cooper's known to be false claims in regards to my mental health was all he would need to parrot Matthew F. Cooper's unsubstantiated prejudicial opinion.

    (e) With zero concerns for the implications, Tara Diamond repeatedly placed herself in role of witness. On this particular matter—with zero evidence, nor qualified professional expertise in the area of mental health—she provided her unqualified and unsubstantiated personal opinion on this Plaintiff's mental heath. She did so knowing her opinion was forming the basis for substantial custodial decisions. She did so while also repeatedly citing illegally acting Marsha Greenberg. She did so against AFC rules and guidelines. And the "opinion" she placed on record unsurprisingly parroted Matthew F. Cooper's claim own when he implied the response he sought from her.

    (f) And all defendants continue to use Matthew F. Cooper's false claims to discredit this Plaintiff, even though there are 4 psychiatrists' professional opinions that state the opposite; evidence all defendants' willfully ignore. Further issues with the related ordered evaluation will be detailed below.

201. Starting June 30, 2022, the First Department Appellate Judges join in the character assignation of this Plaintiff, and now publicly assert child abuse of this Plaintiff—with zero evidence on record of me being an unfit parent.

202. The First Department Appellate Court Judges do so even though they admit there has never been an evidentiary hearing, and so again, obviously the standard of clear and convincing evidence could not have been met.

203. And the First Department Appellate Court Judges do so by rewriting history in their appeals decisions to conveniently and intentionally overlook:

    (a) A "child's choice to live exclusively with [J.M's] father" has no barring on this Plaintiff's legal rights;

    (b) Matthew F. Cooper had not seen "behaviors" of this Plaintiff when he removed my legal rights in August 2020; this is not only because he removed my rights without me or legal representation for me present, but also because up to that date he had insisted on lawyer-only, off-record chambers sessions.

    (c) Related, and against constitutional protections and state law, the First Department Appellate Court judges state Matthew F. Cooper's concerns about my "behaviors" in the courtroom can be a factual justification for his acts.

    (d) They intentionally mislead on the timeline of events, to suggest Matthew F. Cooper's decision was made in October 2020 instead of August and September of 2020.

    (e) They intentionally reference our child's current age of 17 to further discredit this Plaintiff publicly and justify their acts even though "the age of the child at the time the proceedings are initiated is controlling " (J.M. was 14).

### *Claim 7: Deprivation of rights and public claims of criminal behavior without citation of the nature and cause of the accusation*

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Esther Cajuste, Eric Teitel, Lower Court Judges, Tara Gore, First Department Appellate Judges, and Executive Officers*

204. I incorporate all of the above and restate for this claim.
205. Defendants made *many* unsubstantiated claims and and engaged in defamatory claims that they know to be untrue while refusing to present formal charges.
206. Defendants continue with their many unsubstantiated claims and defamations without presenting charges so that such charges may perpetually evolve, due process can be obstructed, and I cannot present a proper defense.
207. First Department Appellate Judges refuse their duty to correct such matters, even when directly asked.
208. Executive Officers refuse their duty to correct Tara Diamond, Matthew F. Cooper, Judge Ariel Chesler and First Department Appellate Judges.

209. Despite claims of what now constitutes criminal behavior and the serious deprivation of my rights, Matthew F. Cooper, Judge Ariel Chesler, the First Department Appellate Court Judges, Esther Cajuste and AFC Tara Diamond have never presented any formal charges against me —even as though required under state statutory rules, federal law, and ethical codes
210. This is despite repeat requests and demands that they do so (e.g., E2 line 2).
211. Ryan Mack, Tara Diamond and the State have never filed a requisite petition against me.
212. Tara Diamond merely states her own personal opinions (not even J.M.'s position as she ethically restricted in her role) or aligns her opinion with Matthew F. Cooper if prompted; and then willfully allows her unauthorized opinions to serve as fact on record.
213. The only clarification Matthew F Cooper provided are nebulous statements such as "the things that have been said" and "I have concerns." And he outright refused to clarify further when directly asked to do so.
214. Judge Ariel Chesler and Esther Cajuste repeatedly confirm they had not even read the record and don't understand the issues before him; merely repeating they were "looking into it" for over 10 months.
215. Judge Ariel Chesler refused to even state the purpose of a court appearance he held December 6, 2022 (the same one he faked a default on), and ignored demands that any claims and evidence against me be cited.
216. ACS Tara Gore never notified me of any investigations against me, even as she willfully obstructed a relationship with my child and acted as if my parental rights were terminated.
217. Instead, all claims remain nebulous and oscillate, as Defendants' hide behind a child to justify their behavior.
218. They all act so, not only without any evidence that abuse occurred, but no concern that a) Tara Diamond and Ryan Mack's claims against me conveniently evolve when I adequately refute with evidence or attempt to subpoena pertinent documents; b) the claims they do attribute to our child were not introduced on record until over a year after the courts had already removed J.M. from my home and isolated our child with Ryan Mack, and after the courts had already taken away my legal rights so I was silenced; c) they made their claims

willfully lying under oath and admitted to their own perjury on the record in subsequent appearances; and c) many of Tara Diamond's claims from J.M. were not only false but are ludicrous legal justifications for State involvement (e.g., I wouldn't let J.M. take her weighted full sized keyboard piano to Ryan Mack's home).

219. And yet, now claims of child abuse have been introduced by the First Department Appellate Court June 30, 2022.

220. The details of this new charge remains wholly unknown to me, despite State requirements.

221. It is impossible to defend myself.


### Claim 8: Ignoring and Obstruction of Exculpatory and Material Evidence

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Marsha Greenberg, Eric Teitel, Lower Court Judges, and First Department Appellate Judges.*

222. I incorporate all of the above and restate for this claim.

223. Defendants defamed Plaintiff, and maliciously asked for or supported "temporary orders" without requisite evidence of unfit parent; *or any* evidence submitted by Ryan Mack, the AFC, the state, or court "expert."

224. Under the guise of "temporary orders" made without requisite proof of harm or due process, and in disregard for federal laws around domestic violence, J.M. was isolated with her father, that Matthew F. Cooper, Judge Ariel Chesler and Esther Cajuste prematurely and prejudicially favored Ryan; even though this Plaintiff claimed and *presented evidence to support my claims*—at the first opportunity available— that neglectful parenting and sexual abuse had occurred.

225. Requests for appropriate fact-finding, and requests for evidence were repeatedly denied me by defendants.

226. Requests that the court require financials, sign relevant subpoenas, or compel evidence were ignored or outright denied by defendants.

227. Copies of orders provided to me, or to have  related decisions placed in writing were denied me.

228. Instead of review of existing exhibits, signing subpoenas, and compelling relevant evidence, Lower Court Judges maliciously relied entirely on refuted and contested hearsay from AFCs, evaluators and Ryan Mack. First Department Appellate Judges uphold.

229. Lower Court Judges and First Department Appellate Judges not only ignored highly pertinent evidence, they obstructed evidence of Ryan Mack's coercive control, neglect and abuse of me or J.M.

230. Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and First Department Appellate Judges inequitably and immediately disbelieved this Plaintiff on such matters regardless of evidence, findings and Ryan Mack's blatant and admitted to perjury. Or my claims were disingenuously minimized, regardless of laws and rules intended to protect.

231. As previously stated, Defendants asked for, ordered, or upheld "temporary orders" without *any* evidence submitted by the Ryan Mack, Marsha Greenberg, Eric Teitel, the AFC, or the state. Defendants then denied and obstructed my right to see evidence against me, and in doing so imposed on my liberties.

232. The evidence denied me was material and exculpatory in nature.

233. In addition, First Department Appellate Judges did not correct. Instead they intentionally misrepresent fact, ignore or cover up the misconduct or worse act in the same unethical manner when presented with the cases for review. They know or should of known they had a duty to correct.

234. Matthew F. Cooper, Judge Ariel Chesler ignored, or disregarded clear and convincing professional opinions because it did not align with capricious, prejudicial, opinions.

235. For example, Matthew F. Cooper simply ordered another evaluation when one expert told him the evaluation would be invalid. And Judge Ariel Chesler insisted on waiting for Eric Teitel's report even when he had a valid, current mental health evaluation sitting in front of him.

236. Most important to this Plaintiff, all Defendants continually chose to engage in a collective character assignation of me with J.M.

237. Defendants used the judges' abuse of power to enable Tara Diamond, Ryan Mack and ACS's Tara Gore to act with a veneer of legitimacy as they falsely defame me to my own child, and to professionals and community members interacting with J.M.

238. This has resulted in a clear and unrecoverable harm to J.M. and my relationship.

239. Defendants engage in their unsubstantiated, known-to-be-false character assignation as they conveniently and willfully overlook Ryan Mack's abusive and coercive behaviors:
    (a) He displayed classic abuser behaviors such as stalking our child, controlling her time away from his home; controlling her phone, isolating her from her family and community members, etc.;
    (b) Most importantly, J.M. had extremely deteriorated—including indisputable signs of extreme psychological distress—after isolation in Ryan Mack's care;
    (c) There are now 3 ACS cases against Ryan Mack—and not one against this Plaintiff;
    (d) J.M. had run away from Ryan Mack twice after being isolated in his care;
    (e) J.M. threatened suicidal acts due to feeling unloved in *his* home;
    (f) I provided clear evidence that our child's was being manipulated and making false claims; and repeatedly requested the right to present indisputable evidence on such matters.
    (g) It is clear Ryan Mack had indisputably lied to the court on highly pertinent matters; and he and his lawyers admit to such acts on the record.
    (h) Ryan Mack repeatedly and blatantly acted in contempt with the intention of severing this Plaintiff's relationship with J.M. and obstruct my constitutional right to parent;
    (i) The child's own appellate lawyer admitted that the relationship between J.M. and this Plaintiff became increasingly severed during the time the court unnecessarily began interfering in our family—during the time the courts enabled Ryan Mack's coercive behaviors.

240. I was also denied the right to submit highly pertinent evidence:
   (a) Judge Ariel Chesler refused me the right to submit indisputable evidence that Eric Teitel was lying to the court and that his evaluation was biased and unscientific (this even though Judge Ariel Chesler also prematurely stated he expected to use the statements made by Eric Teitel negatively against me);
   (b) The First Department Appellate Judges denied me the same right;
   (c) The First Department Appellate Judges denied me the right to submit evidence that demonstrated I did not have a lawyer when my legal rights were removed;
   (d) The First Department Appellate Judges denied me the right to submit evidence that Ryan Mack's lawyer, Samantha Surdi had lied to the court.

### ***Claim 9: Intentional Delay of Due Process***

*Applies to Defendant Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Eric Teitel, Lower Court Judges, and First Department Appellate Judges*

241. I incorporate all claims and restate for this claim.
242. All defendants maliciously obstructed due process, a trial and participated in an unnecessarily protracted timeline that was far outside ethical guidelines or statutory rules.
243. Under the guise that the removal of my rights was justified because it was done with "temporary orders," Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste and First Department Appellate Judges continued "temporary" removal of custody rights for unreasonably protracted time periods without legitimate fact-finding, evidentiary hearings, trials or other requisite due process.
244. They did so in blatant disregard for federal requirements and state statutory guidelines for "investigations," presentation of charges, and other related law.
245. Instead of legitimate due process, Matthew F. Cooper, and Judge Ariel Chesler deprived me of constitutional rights for an unnecessarily long delay to wait for a report from the alleged expert Eric Teitel.
246. The First Department Appellate Judges refused to correct this error in law. Instead, they outright denied or intentionally overlooked and and refused to discuss the very serious legal questions presented to them on this matter.

247. During the years in which an unconstitutional "pending" evaluation was allegedly being conducted, *this Plaintiff did comply* with the court order mental health evaluation (I was not the cause of delay).
248. *However, I have never consented or volunteered with just cause.* Many causes to not consent are outlined in all the claims of this complaint, but additional reasons include this "expert's" evaluation was the only "evidence" Ryan Mack would have to retroactively support custodial changes already made. And it was "evidence" that was still being manufactured as late as

almost two and a half years after Ryan Mack's fraudulent requests were already granted with no evidence and no trial.

249. In addition, the state of my mental health is irrelevant to and does not provide clear and convincing evidence for any of the contested allegations made by Ryan Mack or Tara Diamond. Ryan Mack did not request custodial changes on the basis of my mental health. Tara Diamond has not requested custodial changes on this basis, and in fact has not filed *any* motions, documents or evidence.

250. The claims of mental illness were contrived by Matthew F. Cooper. And the related evaluation was ordered to distract from the fact that defendants were obstructing legitimate due process and did not have evidence.

251. Matthew F. Cooper repeatedly suggested he intended to rely upon the outcomes of this single evaluation—while ignoring all else— to justify the substantial custodial changes he already made.

252. And during a March 2021 appearance, this Plaintiff was shocked to hear Matthew F. Cooper say my unwillingness to state I "voluntarily" participate in a prejudicial, irrelevant, one-side process, was enough justification for Matthew F. Cooper to remove all access to J.M for ever.

253. This ordered mental health evaluation indisputably delayed proceedings and trial. Matthew F. Cooper made it "100% clear" he would not take any other actions until the evaluation was completed.

254. Matthew F. Cooper (and later Judge Ariel Chesler) refused to take any other actions, even as this evaluation caused unnecessary delays for what was over two years—and regardless of the growing deterioration of J.M.

255. Consider that three different evaluators were actually assigned:

    (a) The first evaluator assigned, Ryan Mack refused to pay despite being court ordered to do so. This caused a three month deprivation of my rights with no penalty for Ryan Mack's contempt.

    (b) The second evaluator assigned stated he could not conduct the evaluation as it would yield "invalid" results. Matthew F. Cooper was notified of this very substantial issue.

        1. Matthew F Cooper also presented with an already completed mental health evaluation by the City Hospital which showed I was not a danger to myself or others (E9, E10).

        2. Matthew F. Cooper did not care and stated he would find someone who would conduct such an evaluation regardless.

        3. This resulted in what became a 7 month deprivation of my rights.

    (c) This third evaluator assigned by Matthew F. Cooper was Eric Teitel.

        1. By the time Eric Teitel was assigned, March 2021, 7 months had already passed with the removal of my legal rights with no evidence or trial.

        2. And while Eric Teitel spent less than two hours with this Plaintiff—for a process allegedly to determine the state of *my* mental health—his evaluation took over a year to reach any real conclusion.

3.  It was not until May 2022, that a letter from Eric Teitel was received and read by Judge Ariel Chesler (the judge that took over after Matthew. F. Cooper's early retirement).

4.  Comparatively, I was able to have two independent mental health evaluations conducted—by a mental health unit *routinely* relied upon by the New York court system (for a wide range of criminal and civil matters). Each of these evaluations were conducted within one day (E10, E11).

5.  In a failure of duty and fraud on the court, Matthew F. Cooper placed this case into abeyance, for the alleged cause of Eric Teitel's "pending" mental health evaluation and to await his retirement (E12). At the time the abeyance order was written there had been a 14 month deprivation of my rights.

6.  This abeyance was done after "consult" with Eric Teitel (E13). And this abeyance was put in place even though Eric Teitel confirms in a later letter he had no intention of completing his evaluation.

7.  And it is important to note, Matthew F. Cooper placed the case in abeyance, not only after "consult" with Eric Teitel, but also conveniently at the same time a second ACS case had been opened up against Ryan Mack. This case was due to Ryan Mack's neglect of our child's extreme self harm.

256. Matthew F. Cooper's abeyance also resulted in what was a full 20 month delay of my rights, before a letter from Eric Teitel was even considered in the court in front of Judge Ariel Chesler.

257. During this time, a third ACS case against Ryan Mack was also opened up during the abeyance's resulting delay. J.M. had run away from Ryan Mack's house because of his controlling behaviors (behaviors I had already told the courts about) and had been living in a homeless shelter.

258. Matthew F. Cooper's obstruction of judicial processes made it so this Plaintiff could not take any actions when these two additional ACS cases had been open up against Ryan Mack.

259. In addition, Matthew F. Cooper's invalid orders were use to obstruct my right to help manage our child's care at a very crucial time. When she spent several days in a homeless shelter—no one contacted me, included me in a care plan, attempted reunification, or requested names of family members or family friends she could stay with, despite my attempts to be included, and despite statutory requirements they do so (to be detailed further below).

260. Judge Ariel Chelser was notified of this serious situation.

261. This Plaintiff had provided Judge Ariel Chesler with a second, and current mental health evaluation of this Plaintiff that stated I was not a danger to myself or others, and indisputable evidence that our child was engaged in extreme truancy and was failing out of her classes in Ryan Mack's care.

262. Judge Ariel Chelser choose to wait on the alleged "report" from Eric Teitel as a real crisis situation was occurring, even though it was not until May 2022, that Judge Ariel Chesler was finally given a letter from Eric Teitel, and in this letter Eric Teitel had refused to move forward with his evaluation.

(a) Eric Teitel's letter is dated December 6 2022; three months after his "consult" with Matthew F. Cooper that resulted in an abeyance to await his "pending" evaluation. During this time, Eric Teitel made zero efforts to continue forward with his evaluation and allegedly couldn't be bothered to notify the courts in writing of his decision to not move forward for three months.

263. Judge Ariel Chesler's justification was the evaluation had to be done because Matthew F. Cooper had said to do it.

264. Judge Ariel Chesler made such a decision admitting he was not familiar with the issues or the record—even after he had already signed a motion requesting he reconsider the issues of the case as early as January 2022.

265. In a pattern of inequity, Judge Ariel Chesler disregarded Ryan Mack's blatant perjury in his court on these serious matters. He did so regardless that of the impact such perjury had on J.M.'s best interest or the fact that this Plaintiff was experiencing substantial deprivation of rights due to Ryan Mack's lies.

### _Claim 10: Intentional Professional Gross Deviations and Malpractice_

_Applies to Defendants Tara Diamond, Marsha Greenberg, Eric Teitel, Tara Gore, Lower Court Judges, and First Department Appellate Judges and Executive Officers_

266. In incorporate all other claims and restate here.

267. AFCs and experts improperly assume roles belonging to a State agency so they may operate with zero oversight.

268. AFC and "expert" evaluators' personal opinions and alleged wishes of the child are inappropriately elevated, above that of these co-plaintiffs, going against state and federal law.

269. AFCs are immediately granted greater authority over our children by Lower Court judges than ourselves without established probable cause; whom then threaten legal actions against us on improperly investigated or known to be false issues.

270. Lower Court Juges, First Department Appellate Judges and Executive officers do nothing to correct misconduct.

271. All defendants fail to remove themselves from behaviors when notified.

272. Marsha Greenberg accepted the role of therapist for J.M. and then provided proceeded to break the law, as well as almost every ethical guideline and professional standard required of a therapist.This includes but is not limited to:

(a) She accepted the assignment for a suicidal child even though she was not registered to practice in the state of New York. This is an act that can be classified as a felony.

(b) She provided suicidal care for a child she had never met over the phone.

(c) Against law and professional standards, she advised us against bringing J.M. to emergency care when J.M. has expressed suicidal ideation.

(d) She did not and would not provide a suicide safety plan for J.M. when asked.

(e) She inappropriately elevated her personal opinions about the care and management of our child above that of myself and above Ryan Mack; and coercively insisted that she we immediately sign off such rights to her.

(f) She abruptly quit providing care for J.M. who had even placed her suicidal ideation in writing—that Marsha Greenberg had also explicitly stated was in dire straits—with zero notice and without arranging adequate care.

273. At the implied or explicit request of the judge, Tara Diamond willfully and unethically switched between investigator, witness, social worker, mental health professional, guardian ad litem and judge; while blatantly disregarding the ethics of and willfully acting outside of her authorized role, which was to serve only as *attorney* and the "voice" of J.M.

274. This includes but is not limited to:

275. First and foremost, AFC Tara Diamond repeatedly made known-to-be-false, intentionally misleading and defamatory statements about this Plaintiff to the court.

276. When given an opportunity to correct she did not do so.

277. Tara Diamond refused to provide evidence when it was demanded of her.

278. Against standard, AFC Tara Diamond provided woefully inadequate understanding of the record, court filings, as well as the evidence that had been submitted by this Plaintiff. For just some examples:

(a) She repeatedly made it clear she had not read files because she had not ensured she was entered in the NYSCEF electronic system of record, even though it is statutorily required for all lawyers in Supreme Court, and she also had signed an affidavit explicitly agreeing to electronic filings.

(b) In an act that could be classified as a felony, she repeatedly cited Marsha Greenberg; even as filing noted Marsha Greenberg performed her services illegally.

279. Against restrictions, AFC Tara Diamond unethically (and fraudulently) acted as witness, even as she knew and encouraged her alleged investigations with "collaterals" be used as basis for substantial custodial decisions.

280. For her same alleged investigative work, AFC Tara Diamond demonstrated *she was remarkably inadequate at the job*. For example, she never reported our child was failing out of high school, she was unaware our child was cutting, she had no clue an ACS case had been opened against Ryan, etc.

281. Tara Diamond unethically substituted her own opinion for that of J.M.'s, when asked to do so by Matthew F. Cooper.

282. Against guidelines and practice, Tara Diamond engaged in ex-parte communications with Ryan Mack.

283. Against guidelines and practice, Tara Diamond aligned herself with Ryan Mack's position. This is not in dispute; that she had aligned herself such is in writing in the AFC papers filed in the First Department Appellate court.

284. Tara Diamond repeatedly and illicitly elevated her personal opinion about the care and management of our child above that of myself and above Ryan Mack.

285. Eric Teitel disregarded all code of conduct for forensic evaluations; including outright lying to the court about his work and timeline.

286. The court ordered mental health evaluation of this Plaintiff was not only discriminatory and had no evidentiary validity, it could not have served as valid "evidence" due to following (not exhaustive) extreme issues:

    (a) Eric Teitel was not on the Appellate Division's vetted list of approved evaluators.

    (b) He was wholly unconcerned that I was not participating voluntarily (and failed to act with proper procedure on such a matter) while he also unequivocally stated he would NOT be using objective or scientific methods, could not state a purpose of focus of his evaluation, refused to clarify his methodology, said he was "organically" making it up as he went along, and repeatedly suggested he had engaged in inappropriate ex-parte communications with the court.

    (c) He could not articulate a difference between his mental health evaluation and that of the other psychiatrists that had already completed their evaluations; was shocked to learn they even existed; and admits the court had not given him such pertinent information.

    (d) He accepted an assignment he demonstrated he was remarkably unqualified to perform.

        Besides obvious issues such as his professional experience up to that point was as a child psychiatrist conducting an evaluation of a woman, with no family systems or domestic violence professional experience; his stated "expert" opinion of our child was that she was "showing no signs of distress" and was "progressing nicely" in her father's care the same day J.M's high school counselor called to say she found our child was engaging in severe self-harm, and at the same time our child was failing out of high school and extremely truant.

    (e) There is ZERO oversight of Eric Teitel's work (this is not a rhetorical position; both oversight bodies clarified they have no "purview" over him) (e.g. E15).

    (f) He refused to identify his "collaterals" or the documents that had been provided to him by the court.

    (g) He inexplicably stated he would be relying upon court transcripts as the basis for medical work, and repeatedly talked about court proceedings instead of conducting a legitimate mental health evaluation despite my clarification that was what was ordered and is what I would engage in.

287. It is also important to note, it was when Eric Teitel learned that I recorded audio of our sessions together that he decided he would not continue forward with his evaluation.

288. In what is a possible vengeful act, he then misled the courts about scheduling difficulties (in which he had created a 5 month delay, and was also gone on vacation for almost all of August 2021). More concerning, while Eric Teitel refused to complete his evaluation, he still provided a very weighty, and defamatory custody recommendation, that my physical custody rights be removed, and that I only be granted supervised visits—an approach commonly reserved for parents with serious and convicted violent backgrounds and convicted felonies. He recommended such a consequential custody change be made—not because of a citation of proven problematic parental history—but because this Plaintiff appeared to him to be participating in his "organic," unscientific, prematurely decided evaluation under duress.

### *CLAIM 11: Forced Invasion of Privacy without Cause*

*Applies to Defendants Ryan Mack, Samantha Surdi, Lisa D'Agostino Tara Diamond, Marsha Greenberg, Eric Teitel, Lower Court Judges, and First Department Appellate Judges, and Executive Officers*

289. I incorporate all other claims and restate for this claim.

290. Defendants asked for, enabled or benefited from the unnecessary forced invasion of my privacy without substantiated (or even plausible) probable cause of harm to myself or others due to a mental illness.

291. These personal trespasses are forced upon this Plaintiff regardless that a mental health evaluation was evidentiary irrelevant to the claims made against Plaintiff; and that the evaluation that was conducted had no discernible purpose (the evaluator repeatedly admits to this fact).

292. This invasion of my privacy was initiated by Matthew F. Cooper not at the request of any involved parties, and based on allegations he knew to be false.

293. These invasions of my privacy were ordered as a punitive act for asking Matthew F. Cooper to act ethically.

294. These personal trespasses were forced upon me even though I made clear I did not consent to prejudicial, evidentiary irrelevant, and one-sided mental health evaluations.

295. These "evaluations" were repeatedly ordered even as the courts were already given completed evaluations from competent, licensed professionals that attested to the soundness of my mental state.

296. The invasive and highly consequential "evaluations" was forced upon me even as Matthew F. Cooper, Judge Ariel Chesler, and the First Department Appellate Judges were made aware they would be "invalid," unscientific, prematurely determined, they had no established professional standard or oversight, among other serious issues.

297. First Department Appellate Judges and Executive Officers did not correct. Instead they intentionally misrepresent fact, ignore or cover up the misconduct or worse act in the same unethical manner when presented with the cases for review. They know or should of known they had a duty to correct.

298. It is indisputable that Matthew F. Cooper used an undefined mental instability as the basis to remove my legal rights; without a factual basis on record, and while lying under oath on the matter. He did so, even though:

    (a) There is no history of an aggressive mental health disorder for this Plaintiff;

    (b) There is no evidence that I have *any* history of mental illness; never lone that I am currently suffering from any serious illness.

    (c) He had written testimony, from our child's then psychiatrist, stating that she has had no problems working with me and it was important that I remain a part of our child's mental and physical medical decision making

    (d) He and Judge Ariel Chesler were provided two independent mental health evaluations (signed by three psychiatrists) which state I am mentally stable and I am not a harm to myself or others.

(e) Matthew F. Cooper states on record that he did not have evidence that I was unsafe.

299. Matthew F. Cooper provided me with no written claims of what mental illness, and related alleged unsafe behaviors he was using as the basis to remove my parental rights. Instead, he merely stated phrases such as he "had concerns," and "the things I have heard."

300. He directly refused to define the "behaviors" when this Plaintiff asked him to do so on the record, saying "I will not."

301. That the alleged state of my mental health by Matthew F. Cooper is the basis of the continued removal of my rights as a parent is also not in dispute. Matthew F, Cooper repeatedly stated he would not return my rights until a mental health evaluation was completed. And Judge Ariel Chesler stated he would continue to uphold the order, even though it was legally moot, on the sole basis that Matthew F. Cooper had ordered it.

302. The Appeals Judges state the evaluation was justified—not because of any cited evidence—but on the basis of the "court's own observations of the the mother." Again, they state this without factual basis; they were notified Matthew F. Cooper had not seen "behaviors" of this Plaintiff when he removed my legal rights in August 2020. The record supports my statement, and they also denied evidence on this very substantial issue. In addition, not only were Matthew F. Cooper's claims to my alleged behavior intentionally defamatory and designed to discredit me, under state and federal law, behaviors in the courtroom may not be used as justification to removal custodial rights.


### _Claim 12: Discriminatory and Prejudicial Use of Mental Health Evaluations_[3]

_Applies to Defendants Samantha Surdi, Lisa D'Agostino Tara Diamond, Eric Teitel, Lower Court Judges, and First Department Appellate Judges, and Executive Officers_


303. I incorporate all other claims here, and state the mental health "evaluations" ordered of this female Plaintiff is discriminating, inequitable and prejudicial.

304. Defendants maliciously participated in a discriminating and prejudicial process, even though they knew they knew there was no evidence on record that this Plaintiff had a mental illness, and that there was evidence on record that directly contradicted the false claims being made against me.

305. The request that Ryan Mack (whom is male) also be evaluated if such an invasion were to occur, was denied, even though Ryan Mack has a well established history of significant mental health issues and problematic parenting.

306. In addition, First Department Appellate Judges and Executive Officers did not correct. Instead they intentionally misrepresent fact, ignore or cover up the misconduct or worse act in the same unethical manner when presented with the cases for review. They know or should of known they had a duty to correct.

---

[3] This Plaintiff respectfully notifies this court, the New York Court system does accept federal funding including pertinent funds from the federal STOP program, that addresses domestic violence concerns.

307. Falsely alleging a woman has a mental illness is a commonly understood misogynistic mechanism for discrediting and silencing her.

308. This is especially true in my case since:

    (a) this Plaintiff had no history of mental illness prior to court invasion;

    (b) the courts had no evidence any illness existed;

    (c) Matthew F Cooper, Judge Ariel Chesler, First Department Appellate Court Judges, and Eric Teitel maliciously ignored all evidence that directly and adequately contradicted their prejudicial opinions; and

    (d) The order of a mental health evaluation was suspiciously timed with the removal of my legal rights as a parent. The removal of my legal rights as a parent (and related ability to participate in the mental health decision making of J.M.) was suspiciously timed with J.M.'s then psychiatrist stating that there was an "unusual dynamic" and that it was important that I remain involved in our child's care. This is important not just because the only actual "expert" opinion the court did have was ignored by Matthew F. Cooper, but also because he effectively silenced my ability to present my side of issues to "experts."

309. Matthew F. Cooper statements further confirm the discriminatory nature of his actions, and that he acts biased in ways known to disadvantage a female litigant.

310. Matthew F. Cooper originally alleged he was ordering a one-sided "mental health" evaluation instead of full forensics because I did not have money to pay; that Ryan Mack was paying is for the evaluation is an obvious issue of bias; and also a well-established gender inequity.

311. Matthew F. Cooper claimed he believes I am mentally unstable on the basis I allegedly lied and "obsessed" about Plaintiff- Respondent's grooming behaviors with our child:

    (a) Matthew F. Cooper discredited me without any factual cause; simply disregarding my testimony on this matter as untrue.

    (b) He chooses to discredit me despite evidence he had where Ryan Mack admits to the behaviors himself in writing.

    (c) In contrast, Matthew F. Cooper simply accepted Ryan Mack's false statements about this Plaintiff and this matter as fact without a single piece of evidence from Ryan Mack.

312. Matthew F. Cooper also admits on record that the actual intent of the mental health evaluation was punitive (e.g., in response to requests for legitimate fact-finding):

MS. Mack: I am asking that the Court order --sign the subpoenas that I have filed.

THE COURT: Not happening.

MS. MACK: May you please —

THE COURT: Don't waste your time. I'm not doing it.

MS. MACK: Why not?

THE COURT: Because I'm not doing it. It doesn't serve any purpose. If you have a problem I want you to have a mental health evaluation.

313. Matthew F. Cooper refused to sign subpoenas for highly pertinent evidence on the matter of Ryan Mack's history of sexual grooming on the basis that Ryan Mack could lose his job if he signed such subpoenas.

314. Matthew F. Cooper also chose to ignore the fact that:
    (a) Ryan Mack does have a well-established history of mental illness;
    (b) Ryan Mack had an existing ACS case against him of repeat sexual grooming with our daughter, reported to the State by the highly respected Ackerman Institute;
    (c) Ryan Mack repeatedly admitted to his sexual behaviors in writing; and Matthew F. Cooper had that clear evidence before him;
    (d) In response papers from Ryan Mack and his counsel Lisa D'Agostino and Samantha Surdi, acknowledge Ryan Mack's guilt on this matter; and
    (e) Ryan Mack also now has 2 additional ACS cases against him for neglect, and ignoring self harm of our child that occurred when our child was isolated in his care.

315. Judge Ariel Chesler, and the First Department Appellate Judges have chosen to uphold and enforce this discriminatory behavior—despite clear bias, and constitutional and civil rights violations, and despite the impact for all future litigants.


### _Claim 13: Defendants Work Against Liberty Interests of Parent and Children_

_Applies to Defendants Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Marsha Greenberg, Tara Gore, Eric Teitel, Esther Cajuste, Lower Court Judges, First Department Appellate Judges_

316. I incorporate all other claims here.

317. Defendants maliciously participated worked against and damaged the liberty interests of this Plaintiff (and our child), against state, and constitutional and federal protections.

318. Defendants maliciously asked for, participated in or compelled acts designed to severe the ties between me and J.M., without legitimate cause and without due process, based on claims they knew to be fraudulent.

319. Marsha Greenberg's vindictive statements, when she abruptly quit performing therapeutic services she was not legally allowed to perform, that I was "interfering" in her care, served as one of the many fraudulent claims made by Tara Diamond as justification to sever my custodial rights and interactions with my child and her care providers.

320. Matthew F. Cooper, and Judge Ariel Chesler were repeatedly told that the court was being misused by Ryan Mack's for his coercive control, obstructing behaviors and intentional severing of mother-child bonds; and that Ryan Mack, Samantha Surdi, Lisa D'Agostino,

Marsha Greenberg, Tara Diamond and Eric Teitel were lying to support such a scheme. Instead of acting to correct they too participated in Ryan Mack's scheme.

321. First Department AFC filings admit that mother-child bonds became increasingly severed during the court proceedings (which were not only illegitimate but unnecessarily protracted).

322. Ryan Mack and Lisa D'Agostino also readily admit on record that court proceedings are damaging to parent-child bonds.

323. Matthew F. Cooper, Judge Ariel Chesler, and First Department Appellate Judges failed to correct such actions.

324. Tara Diamond immediately assumed a role of greater authority over the management and care of our child than ourselves. The role that she was actually authorized to perform does not grant her such authority. Matthew F. Cooper encouraged Tara Diamond to behave this way.

325. Matthew F. Cooper and Tara Diamond repeatedly obstructed or outright denied state-required reunification efforts (included my repeat requests to work with the highly respected Ackerman Institute, the Family Separation Clinic, or like organizations), in direct conflict with requirements the State requirements.

326. They did so even when such a position went against J.M.'s wishes (allegedly a justification for their abusive of power and bullying).

327. The same inequities and deprivation of my rights continued when ACS's Tara Gore became involved

328. It is important to understand, ACS became involved because there are three ACS cases against Ryan Mack—not against this Plaintiff.

329. Yet, ACS Tara Gore made not attempts to reunite me and J.M. when our child ran away from Ryan Mack's home, despite requests and being statutorily required.

330. She did not include me in care planning—as she is statutorily required.

331. She did not keep me informed of my child's well-being and in fact obstructed me from having any knowledge of my child.

332. Even worse, ACS Tara Gore actively engaged in severing the relationship with my child and the collective character assignation.

333. She encouraged a parent of one of J.M.'s friends to call the cops on me if I came around J.M, and also had no concerns that this parent then told and encouraged J.M. to do the same to me. Tara Gore lied when she was asked about it.

334. I told her I did not want her speaking with my child. She stated that she was going to regardless. And she lied again when she stated that she did not have to honor my wishes on the matter and that she "had to" speak to my child, whether I liked it or not.

335. Judge Ariel Chesler was notified ACS had a statutory requirement to attempt to reunite J.M. and myself, not Ryan Mack—as I was the full physical custodial parent on record.

336. Instead of taking action, Judge Ariel Chesler stated I was not the custodial parent on record.

337. Without legitimate cause on record, or scientific basis, in what was a presumably a vindictive act, Eric Teitel recommended that the court order supervised visitation between myself and our daughter.

338. Eric Teitel's unnecessarily protracted "evaluation" also contributed to working against mine and J.M.'s liberty interests to remain a family unit.

### *Claim 14: Fraud in and on the Court*

*Applies to Ryan Mack, Lisa D'Agostino, Samantha Surdi, Tara Diamond, Marsha Greenberg, Eric Teitel, Tara Gore, Lower Court Judges, and First Department Appellate Judges, and Executive Officers*

339. I incorporate all of the other claims and declare defendants behaviors have harmed the integrity of the court, with intentional and malicious and numerous acts of fraud in and upon the court.

340. First Department Appellate Judges and Executive Officers were notified of such behaviors and they did nothing to correct.

341. Defendants asked for, enabled or engaged in unnecessary seizure, intrusion and deprivation of my rights without establishing proper jurisdiction.

342. They engaged in unnecessary seizure, intrusion and deprivation of my rights without establishing proper jurisdiction; fraudulently subverting the integrity of the judicial process.

343. Defendants Ryan Mack, Lisa D'Agostino and Samantha Surdi filed motions that were administratively incorrect; and Matthew F. Cooper and Judge Ariel Chesler allowed the case to continue, without proper jurisdiction being establishing.

344. Matthew Cooper, Judge Chesler, and Esther Cajuste ignored, obstructed, or outright denied Plaintiff's requests for administrative corrections or to have written orders for alleged initiating decisions.

345. Matthew F. Cooper and Eric Teitel also purposefully obstructed and subverted court process with fraudulent claims of a "pending" evaluation and placing the case in abeyance to await retirement.

346. Defendants maliciously engaged in fraud on the court.

347. Defendants Judge Ariel Chesler and Esther Cajuste committed fraud on the court, and Esther Cajuste engaged in an admitted to color of law act in writing, when they both refused to provide citation of charges, compel evidence, or to state the purpose of a "hearing" they ordered me to attend.

348. Judge Ariel Chesler was asked to recuse himself due to conflicts of interest (e.g., he was a party to this federal case) and his demonstrated partiality on the bench. He did not.

349. Instead, in response, Judge Ariel Chesler and Ms. Cajuste maliciously orchestrated and faked a default by this Plaintiff.

350. Ryan Mack, Tara Diamond, Samantha Surdi and Lisa D'Agostino conspired together in same fraud upon the court, when they pretended this Plaintiff was in default for not showing to court; even as they witnessed (and sat with her) outside of Judge Chester's' courtroom that was locked during business hours.

351. Defendant Judge Ariel Chesler and Esther Cajuste furthered the fraud upon the court when he proceeded to write significant custodial decisions, based on a fraudulent claim of a default by this Plaintiff.

352. These Defendants acts—and other similar actions—constitute fraud on the court.

353. Defendants Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Eric Teitel, Marsha Greenberg, Matthew F. Cooper, acted to improperly influence the court with defamatory claims they knew to be untrue.

354. Lies were told under oath, in affidavits, and in various filings with the courts, and schemes were concocted to attempt to cover-up certain falsehoods. Known to be fraudulent documents were submitted to the court.

355. Defendants Ryan Mack, Samantha Surdi, Lisa D'Agostino, Tara Diamond, Eric Teitel, Marsha Greenberg, Matthew F. Cooper conspired together—tacitly or explicitly—to fabricate evidence, including attempting unconstitutional and unscientific "evaluations," and providing malicious statements that I "interfere" with medical decision making, and other such acts.

356. Ryan Mack, Tara Diamond and Eric Teitel further perpetuated the fraudulent acts when then refused to provide evidence. Ryan Mack's attorneys were involved in this.

357. Matthew F. Cooper, Judge Ariel Chesler, and the First Department Appellate Judges participating in their fraudulent acts when they refused to compel evidence and allowed unconstitutional, unscientific investigations and hearsay.

358. Defendant Tara Diamond is an officer of the court, yet violated rules governing professional conduct, when engaging in acts such as acting as witness, acting outside the authority that was assigned to her by the court, did not report workloads, did not provide documentation when requested, among many other issues cited.

359. Defendant Eric Teitel became an officer of the court when he accepted the appointment, yet violated rules governing professional conduct, by engaging in acts such as lying to the court, acting outside his assigned authority, not providing documentation when requested, among many other issues cited.

360. Defendants Matthew F Cooper is an office of the court and conspired with Tara Diamond and Eric Teitel to behave in these manners. Judge Ariel Chesler and Esther Cajuste are officers of the court and conspired by allowing them to continue.

361. Defendants Tara Diamond and Marsha Greenberg maliciously acted to improperly influence the court, when Marsha Greenberg fraudulently acted as an "expert" in a profession she was not legally allowed to perform and Tara Diamond repeatedly cited her. Attorney Tara Diamond, Samantha Surdi, and Lisa D'Agostino not only repeatedly cited her fraudulent "expert' opinion, schemes were concocted to attempt to cover-up.

362. Defendant Eric Teitel maliciously acted to influence the court when they presented opinions and alleged facts that they knew to have no scientific or professional basis.

363. Defendants Marsha Greenberg, and Eric Teitel maliciously acted to influence the court when they engaged in malpractice within their respective professions' standards for care and evaluations.

364. Schemes were concocted with Matthew F Cooper, Judge Ariel Chesler, Esther Cajuste, Eric Teitel and with Tara Diamond in to attempt to cover-up related falsehoods.

365. The inequities and deprivation of my rights continued even when ACS became involved.
    1. It is important to understand, ACS became involved because there are three ACS cases against Ryan Mack—not against this Plaintiff.

366. ACS worker Tara Gore is a representative of the state, and she acted maliciously, outside the authority granted to ACS and in gross deviation of professional standards.

367. Tara Gore did not attempt to reunite me and J.M. when our child ran away from Ryan Mack's home.

368. She did not include me in care planning—as she is statutorily required.

369. She did not keep me informed of my child's well-being and in fact obstructed me from having any knowledge of my child.

370. Even worse, ACS Tara Gore actively engaged in severing the relationship with my child and the collective character assignation. She encouraged a parent of one of J.M.'s friends to call the cops on me if I came around J.M, and also had no concerns that this parent then told and encouraged J.M. to do the same to me. Tara Gore lied when she was asked about it.

371. When I told her I did not want her speaking with my child, she stated that she was going to regardless—against current law. And she lied by stating she did not have to honor my wishes on the matter and that she "had to" speak to my child, whether I liked it or not.

372. Judge Ariel Chesler was notified ACS had a statutory requirement to attempt to reunite J.M. and myself, not Ryan Mack—as I was the full physical custodial parent on record.

373. Instead of taking action, Judge Ariel Chesler stated I was not the custodial parent on record. I informed him I had not been served any order with such a significant custodial change and that I wished to see it.

374. Instead of correcting issues, Judge Chesler decided to further the inequities to ensure I have no rights. He states that an OSC filed in 2019 was the same as an order, even though this OSC was not written as such.

### *Claim 15: Inequitable Application of the Law*

*This applies to Matthew F. Cooper, Judge Ariel Chesler, First Department Appellate Judges and Executive Officers.*

375. I incorporate all of the other claims and declare defendants behaviors have harmed the integrity of the court, with intentional and malicious inequitable application of the law.

376. All defendants participate in their inequitable application by their acts or their decisions to not correct.

377. The claims to inequitable application of the law is readily apparent in the claims incorporated here.

378. In addition, I want to highlight a particular custom of practice of inequitable application; as it furthers the claim that there are three classes of parents in New York Courts.

379. The immediate, unconstitutional, de-facto involuntary termination of my rights was allegedly justified on the basis that they had "temporarily" granted my rights to Ryan Mack instead of to the State. This is a common practice in New York Courts.

380. Important to this claim, are the relevant rules and regulations that exist to protect against State overreach in such situations.

381. Under the New York Family Court act (and various other rules and regulations), parties that wish to remove parental rights must first make adequate and documented efforts to reunite a child; there are guidelines and procedures governing investigations for allegations of child abuse and neglect; they must cite any charges and provide related evidence; they must bring formal motions if they wish to remove parenthood (even temporarily); there must be a timely trial; a parent has the right to be assigned a lawyer (including parents whom could lose parenthood on the basis of mental illness); the courts are to "provide for investigative, expert and other services necessary for an adequate defense" if mental illness is involved with an accused parent, and more.

382. Matthew F. Cooper and Judge Ariel Chesler completely disregarded any semblance of such rules.

383. A mere "request" for a custody change made by Ryan Mack is treated the same as an order, and immediately granted with zero due process.

384. Matthew F. Cooper freely assigned Tara Diamond as a "private" AFC, whom acts without any legitimate oversight.

385. He elevated her positions about J.M.'s care such that she was immediately granted greater authority than my own.

386. She acted completely ungoverned and unqualified as she routinely and unethically switched from roles as witness, investigator, mental health professional, guardian, social worker and more. These are not only roles that she was not authorized or ethically allowed to take in or assigned role, or was professionally unqualified to perform, but she also demonstrated *she was remarkably inadequate at them*.

387. The very substantial issue that she refuses to provide evidence has gone without sanction.

388. Matthew F. Cooper and Tara Diamond repeatedly obstructed or outright denied state-required reunification effort (included my repeat requests to work with the highly respected Ackerman, the Family Separation Clinic, or like organizations), in direct conflict with requirements the State requirements.

389. If Tara Diamond truly believed I engaged in child abuse or neglect, under AFC guidelines, her correct course of action was to order an ACS investigation. She did not; conveniently avoiding for all Defendants the statutory regulations that might reign in their behaviors.

390. Matthew F. Cooper freely assigned Eric Teitel as a "private" evaluator, whom acts without literal zero oversight.

391. He acted completely ungoverned and unqualified as he conducted an invasive, unscientific and unconstitutional "evaluation" that was also outside the scope of what he had been authorized to conduct and which he was not qualified. He not only conducted unconstitutional investigative work he had not been authorized for, he also demonstrated *he was remarkably inadequate at it*.

392. The inequities and deprivation of my rights continued even when ACS became involved.
   (a) It is important to understand, ACS became involved because there are three ACS cases against Ryan Mack—not against this Plaintiff.

393. ACS Tara Gore did not attempt to reunite me and J.M. when our child ran away from Ryan Mack's home.

394. She did not include me in care planning—as she is statutorily required.

395. She did not keep me informed of my child's well-being and in fact obstructs me from having any knowledge of my child.

396. Even worse, ACS Tara Gore actively engaged in severing the relationship with my child and the collective character assignation.

397. She encouraged a parent of one of J.M.'s friends to call the cops on me if I came around J.M, and also had no concerns that this parent then told and encouraged J.M. to do the same to me. Tara Gore lied when she was asked about it.

398. When I told her I did not want her speaking with my child, she stated that she was going to regardless—against current law. And she lied again when she stated that she did not have to honor my wishes on the matter and that she "had to" speak to my child.

399. Judge Ariel Chesler was notified ACS had a statutory requirement to attempt to reunite J.M. and myself, not Ryan Mack—as I was the full physical custodial parent on record. Instead of taking action, Judge Ariel Chesler stated I was not the custodial parent on record. I informed him I had not been served any order with such a significant custodial change and that I wished to see it.

400. Instead of correcting issues, Judge Chesler decided to further the inequities to ensure I have no rights. He states that an OSC filed in 2019 was the same as an order (even though this OSC was not written as such), while he also refused to write a legal justification for such an extremely consequential matter, despite requests that the court do so.

401. Inequitably, when I asked that signed OSCs I submitted also be treated as orders—that require Ryan Mack and Tara Diamond to provide evidence, Ryan Mack pay my legal fees (so I can have a lawyer), require Ryan Mack participate in reunification therapy, among other "orders" Judge Ariel Chesler and Esther Cajuste refused to act. They disingenuously repeated they were "looking into it."

402. Refusing to place decisions in writing if it might favor this Plaintiff is a pattern, for Matthew F. Cooper and Judge Ariel Chesler. This is true even if an order is fairly pedestrian.

403. For example, in May 2022, Judge Ariel Chesler finally made a decision on a poor person request that had been pending since February 2021. *Judge Ariel Chesler states on record that I do not have assets to pay legal fees*, and also states Ryan Mack is to pay Attorney for the Child fees. When I attempted to get this decision in writing I was told use Orders to Show Cause (OSC).

404. However, Mr. Calderon (the AFC in the appellate court) refused to accept Judge Ariel Chesler legal position that Orders to Show Cause are orders (E24). Even so, Esther Cajuste and Judge Ariel Chesler's still refused to write such a pedestrian order— even after being notified this was leading to me to be brought to court under contempt charges, and as Tara

Diamond harasses me for fees that I not only can't pay but I contest on the basis she has refused to provide evidence (E19, E20).

405. The First Department Appellate Court Judges refuse to correct Matthew F. Cooper and Judge Ariel Chesler's blatant inequitable application of the law.

406. And these are only some examples of the *many* many many other ways laws and regulations inequitably applied throughout this case.


### Claim 16: Gross Negligence and Deviation from Administrative Standards

*This applies to Matthew F. Cooper, Judge Ariel Chesler, Esther Cajuste, First Department Appellate Judges and Executive Officers.*

407. I incorporate all other claims and declare that Defendants have harmed the integrity of the court, with fraud in and on the court, and intentional and malicious gross negligence and deviation from professional standards.

408. I incorporate all of the above, and state that the acts I identify are understood as allowable; b) even sanctioned in places; and c) as such represent an accepted custom of practice in New York courts.

409. Unethical judges routinely inequitable disregard family court statutory rules and guidelines, in regards to court assignments, timelines, investigations, indigent assigned counsel, and other substantial matters. Defendants had a duty to not only uphold the integrity of the court, but to correct others when presented with misconduct. They failed to act.

410. Executive Officers and First Department Appellate Judges fail to correct gross negligence and deviations from professional standards even though they have an oath and duty to do so.

411. In this complaint, I am highlight only some the *many* known instances of gross negligence and deviation from professional standard that directly affect the integrity of matrimonial and family court proceedings.

412. The facts of my case, data collected, and the facts from many other cases I have evidence and knowledge of support the facts claims made here.

413. Family and Supreme Matrimonial custody cases routinely exceed statutory requirements.

414. Statutory timeline violations are routinely exceeded by *years*, not days or months.

415. Data on such pertinent matters in for child custody proceedings is improperly obscured and misrepresented, even though the case involve something as finite as childhood.

416. Originating motions are often not properly assigned to administrative tracks by the courtroom and judicial assignments are even questionably performed.

417. When motions are assigned to their track, the fact that statutory timelines for discovery and trials are completely disregarded is allowed to continue without legitimate oversight.

418. Blatantly fraudulent and frivolous motions that don't follow statutory administrative rules are routinely accepted.

419. Blatantly fraudulent and frivolous motions are not thrown out, and responsible parties are not sanctioned even after perjury, forgery, fraud and other issues are well established on record.

420. Blatantly fraudulent and frivolous motions are proceeded upon follow no discernible legal sequence, statutory rules or practice.

421. Family and Supreme Matrimonial custody cases routinely use "temporary" orders to avoid common law or statutory timeline violations and requisite due process.

422. Administrative records on such matters are obstructed, obfuscated, woefully inadequate, or intentionally not maintained.

    (a) When Judge Chesler and Esther Cajuste were asked in writing to correct substantial administrative failures they failed to act.

    (b) First Department Appellate Judges were also notified of similar matters. They refused to take any action.


423. Data on pertinent matters such as the assignments of AFCs and "experts" by a judge, and their related fees and credentials are improperly obscured or barren.

424. Judges regularly repeat appoint AFCs; even those known to have conflicts of interest.

425. Same judges routinely order "private" AFCs hourly rates and caps to be paid by the litigants (whom have no choice or are in contempt) at rates that far exceed statutory standards, without requisite financial review, proper cause or reporting of appointments.

426. "Private" appointed AFC routinely do not report finances and sidestep regulations pertaining to caps and rates due to inequitable and conflicting statutory rules and guidelines and lack of oversight.

427. Same AFCs are regularly unethically act as witness, commit fraud, blatantly align themselves with the favored party, or take other prejudicial actions to align with their appointing judge when asked (including in my and others which I have knowledge and evidence of).


428. Judges regularly repeat order "experts."

429. Judge repeat order "experts" that are not on approved "lists" without just cause and without reporting such appointments.

430. Unethical judges routinely order "expert" hourly rates and caps to be paid by the litigants (whom have no choice or are contempt) at rates that far exceed statutory standards, without requisite financial review, proper cause or reporting of appointments.

431. "Private" appointed "experts" routinely do not report finances and sidestep regulations pertaining to caps and rates due to inequitable and conflicting statutory rules and guidelines and lack of oversight.

432. Same experts blatantly commit fraud, or align themselves with the favored party, or take other prejudicial actions to align with their appointing judge when asked (including in my and others which I have knowledge and evidence of).

433. "Private" experts and AFCs conduct a wide-range of "services" that are unconstitutional, unmonitored, unsupervised, unscientific, outside their charges, and in obstruction of due process[4],

434. "Private" experts and AFCs maliciously conduct such "services" instead of them being conducted by state agencies.

435. The courts' redirection of such services to "private" experts and AFCs enables bad court actors to inequitably avoid accountability measures put in place in the Family Court Act, or other measures that have resulted from multiple law suits against New York State agencies (law suits for same or notably similar violations as those noted in this complaint).

436. There is no actual existing scientific or established and credentialed professional standard for the tasks that are routinely asked of "experts" in New York courts. The courts have been notified of this issue.

437. "Experts" routinely define the scope or purpose of their assignments for themselves, in vague "investigations" and "evaluations" in which they act in whatever role they chose for themselves including often simultaneously as investigator, witness, enforcer, judge and jury.

  (a) Even if directly asked, these "experts cannot or simply will not state their purpose or standard.

  (b) In my case, Dr Teitel repeatedly clarifies for this Plaintiff that he has no idea of the purpose of his evaluation; he repeatedly states to this Plaintiff he has no idea what his evaluation would be used for; he repeatedly states he will not be using scientific of objective standards; and repeatedly goes outside the "evaluation" he was authorized to conduct.

438. The professional credentials of these "experts" is not adequately verified even when their opinions are cited and relied upon for substantial custodial decisions.

  (a) That Marsha Greenberg was performing services in act that is classified as a felon and was repeatedly cited by court appointee AFC Tara Diamond is evidence enough of how ridiculously inadequate the oversight is on such matters. This Plaintiff has evidence and knowledge of other outrageous gross negligence.

439. The validity and professionalism of the work conducted by these alleged "experts" work is not adequately overseen; with "experts" rarely sanctioned, regardless of how egregious their actions and misconduct might be.

440. Even when sanctioned, the  First Department Office of Attorneys for Children fails to ensure that "experts" who are removed from their approved list of evaluators no longer work with the courts.

  (a) E.g., parents have complained about forensic evaluator Marc Abrams' egregious misconduct for years. Though he was finally removed from the court's panel, this plaintiff has knowledge and evidence Mr. Abrams' at the time of this filing still continues to work court related work.

---

[4] E.g.,This is just one independent review, that confirms such issues exist: https://ocfs.ny.gov/programs/cwcs/assets/docs/Blue-Ribbon-Commission-Report-2022.pdf

441. And illogically, off-list appointments of "experts" have even less oversight than those approved to be on the panel.

    (a) E.g., the First Department Office of Attorneys for Children admits they have no purview over "experts" who work with the court but whom are not on their approved list. The medical board and Board of Education accepts no accountability if an "expert" is working the court.

442. Oversight of the narrow court rules that provide for accountability on fees and assignments of "experts" and AFCs is grossly inadequate:

    (a) I have knowledge and evidence of many requests sent to Part36, FOIL and respective court clerks for information about multiple court appointees. The FOIL department repeatedly comes back stating they can find no records.

    (b) The FOIL department points the requestors instead to what was apparently a largely empty public database.

    (c) Queries to this database of the names of even court "approved" experts largely turn up mostly empty.

    (d) And in the last month, we have evidence that Part36 (or other parties) are currently working to retroactively back-fill records that has not been properly maintain.

    (e) For even the exceedingly small pieces of data we were able to receive on Defendant Tara Diamond's law firm, the court stopped providing data for cases past 2018, and even those tracked shows blatant statutory cap violations.

        (a) For example, consider one case involving Tara Diamond's partner, coincidently also assigned by Defendant Matthew F. Cooper to serve as a court appointed AFC. Her rate was allegedly statutorily limited to $75 an hour. Yet she managed to be compensated over $150,000 (10x the allowable case limit and 2x the annual allowable firm limit) on a single case, in limited role of representing the "voice of the child." And she managed to turn this role into what financially equates to 1.25 year's worth of full time work; even as she conducted many other cases.

443. And for the "private" court assignments (those whom can be interpreted to fall outside Part36 accountability rules—a vague classification, but apparently roughly meaning any assignments in civil and family that isn't a state agency conducted work for an "indigent" person)—there is even less oversight.

    1. There is no public access to data on such highly relevant and consequential assigned.

    2. Based on information and belief, there are is no legitimate oversight on assignments, credentials, payments and rates of the "private" appointees; and no statutory constraints on fees other than the allowable rate of compensation should match the market rate (a "market" obviously established by the appointees themselves).

    3. Requests sent to any and all bodies and individuals I could perceive as responsible for maintaining records of AFC and "experts" assignments and workloads have been largely ignored.

    (d) One department did respond, and admits their Department of Attorneys for Children is responsible for such records; the data is yet to be received.

(e) Letters to the clerk and Chief Judge of the First Department Appellate Court, notifying them the First Department Office of Attorneys for the Children does not provide provide requested data or even respond have been ignored.

444. Administrative offices act in gross negligence and operate outside of reasonable professional standards for any reputable electronic systems of record.

445. New York courts runs a number of electronic records systems—for court and administrative record keeping. These systems have been designed and built internally by the court system itself.

446. Data in regards to the professional standards that would be necessary to certify any legitimate system of record is improperly obscured or barren.

447. Even though these are significantly important systems of record, these systems are grossly inadequate in their data.

448. And the systems are designed to obfuscate and obstruct access to public data; violating well-known and basic electronic system data access and usability standards.

449. The court's custom designs make it unacceptably onerous and in some cases impossible to independently verify highly pertinent and relevant data to all litigants, such as judicial, AFC and expert assignments, case workloads, timelines, etc.

450. Users that might want to grab public data and repurpose into useable data structures for research and oversight are obstructed by random CAPTCHA systems:

(a) Based on professional knowledge and belief this obstruction is without technical merit and at best represents a gross disregard for current professional standards and tools available for data-driven systems.

(b) However, it should also be noted, that the placement of such a CAPTCHA conveniently means an innocuous act of harvesting already public court data (*my claim is not about confidential information*) for research purposes inappropriately falls into a legal no-mans land, in which a person might be charged for a serious felony-level offense of computer fraud and abuse. Conveniently, charges on such a matter would be determined by the same courts who have designed and run this unprofessional publicly-owned system of record.

451. As previously noted, when data is requested through other channels, myself and others are ignored, denied or informed such data is not available.

452. Even though these are significantly important systems of record, the court's systems are also grossly inadequate in matters of non-repudiation, external oversight and other data integrity standards.

453. Records and administrative actions are regularly removed from the system, without any discernible or verifiable data integrity standards or accountability.

454. And when I sent requests to see independent audits of their systems and information systems professional accountability standards, I am told such records cannot be found.[5]

---

[5] Conducting regular external audits of a system's code, design and functionality, and following well-established data integrity models is merely baseline professional security and information integrity requirements for any public systems of record of great import.

455. First Department Appellate Judges contribute to and reinforce such a custom of practice of gross negligence, and blatant violation of due processes and constitutional rights.

456. Appellant court judges refuse to overturn decisions regardless of blatant fraud upon the court, misconduct, and blatant violations of multiple constitutional, federal, and state statutory and common law. My case illustrate this; with an Article 78 motion denied without even an explanation.

457. Defendants and other responsible persons will ignore significant custodial decisions are made without even a trial, evidentiary hearings, and basic due process (or worse choose to enact violations themselves if a lower court makes necessary corrections to prejudicial, capricious decisions).

458. Appellant Court judges refuse to compel lower court judges to perform even the most pedestrian of duties required for due process.

459. Appellate Court Judges routinely maliciously choose to protect lower court Judges' bad behaviors instead of uphold the law—regardless of how blatant the violations might be.

460. Their disregard on matters have become such a common custom of practice—court officers know they may act with zero adherence to legitimate due process or protection of liberties— so common:

    (a) Court administration even sends memos encouraging judges to ignore rulings that evidentiary hearings must be held before significant decisions can be made[6].

    (b) Judge Ariel Chester and Esther Cajuste freely state in writing that even the most basic due process rights can be ignored in regards to significant custodial changes because his courtroom is in "civil" court.

    (c) My direct requests, written correspondence and motions demanding the Lower Court Judges and First Department Appellate Judge ensure the  proceedings be held to the statutory rules were disregarded. I have knowledge and evidence of multiple other such cases.

    (d) Even when I was outright denied a trial—after almost 3 years of inaction on the originating motions in which I was immediately stripped of physical custodial rights —all First Department Appellate Judges refused to correct for either Plaintiff and even further violations). I have knowledge and evidence of multiple other such cases.

461. The Commission on Judicial Conduct (CJC) and Attorney Grievance Committees— allegedly the grievance channel for such matters— act in gross negligence and deviation from professional standards.

462. The CJC and Attorney Grievance Committees routinely dismisses ethical and legal violations, and rarely take action against judges.

463. CJC members serve excessively long terms.

464. CJC's Robert Tembeckjian, who has been with the CJC for 40 years and the administrator since 2003.

    (a) This is even though Tembeckjian has shown clear bias against family court litigants' complaints against judges of the family court since 'no one who goes through family court comes out happy.'

---

[6] https://www.nysfocus.com/2021/07/23/new-york-judges-crawford-hearing/

465. Almost 40% of CJC members have had terms lasting 10-20 years.

466. About 14% have had terms lasting 15-20 years.

467. Only 40% of its members have been women.

468. More than 55% have been judges.

469. Investigations of complaint filings against judges conducted by the New York State Commission on Judicial Conduct are woefully inadequate:

    (a) 2602 complaints about family court judges were filed with the CJC in the last 15 yrs.

    (b) Less than 5% were investigated.

    (c) Less than 10% of Family Court judges were cautioned (after investigation)

    (d) Less than 1% of Family Court judges publicly disciplined

    (e) Less than 1% of complaints against Family Court judges became formal complaints

    (f) No family court judge has ever had to vacate office by public stipulation

    (g) In 2020 the first family court judge was removed from the bench after formal proceedings (Judge Michael F. McGuire of Sullivan County)

    (h) And in sum action has been taken in only 1.5% of the approximately 60,000 complaints the CJC has received since its inception in 1978.

470. The CJC does not collect detailed data regarding the courts or judges that consistently attract complaints.

471. Complaint proceedings of judges conducted by the CJC are illogically deemed confidential; even those persons whom submitted the complaints are not privy to the discovery, proceedings or logic behind determinations (and even when I requested clarification on such matters I was ignored).

472. Allegedly, Judges are required to report the conduct of their peers[7] to this commission if they have knowledge a judge *might* have engaged in misconduct. Such peer reporting does not occur.

    (a) E.g., First Department Appellate Judges Defendants were explicitly asked, in writing, to report Matthew F. Cooper for his suspected misconduct to the CJC. This included evidence he lied under oath, and obstructed evidence. They failed to do so; simply denying the case without explanation.

473. Names of Judges and number of complaints filed against particular Judges are obfuscated by the committee into merely a presentation by "statistics."

    (a) Therefore, it cannot be determined how many complaints are lodged against a judge, if and when complaints are reviewed, and any complaints submitted are not linked to an outcome (and any decision on the complaints made by this Plaintiff, and others know to me, do not appear).

474. The commission's jurisdiction to enact a discipline is removed if a judge retires; which means the commission knowingly provides a mechanism for judges to avoid accountability.

475. Confidential "private letters of caution" accounted for more than 60 percent of the 548 cases where the commission took any action in a case.

---

[7] under their code of ethics they must report if there is even the appearance of misconduct

476. Unsurprisingly, NY Judges routinely preemptively resign, an act widely known to be taken to avoid discipline or necessary scrutiny from the commission[8].
   (a)  e.g., consider the early retirements of Defendants Janet Difiore, the court's top judge; and her second in command Lawrence Marks in 2022.
   (b)  2021 saw NY judges resigning in "record numbers."

477. Even when a judge's behavior is criminal, or widely known and *found* to be in blatant disregard of judicial conduct rules, or State and federal laws, discipline by the commission does not occur; including Defendant Matthew F. Cooper
   (a)  This includes named Defendant Matthew F. Cooper. Anthony Zappin sued Supreme Court matrimonial judge Matthew F. Cooper for defamation after the judge disseminated a sanctions decision to unofficial publishers. Remarkably, the Court ruled that the defendant was not entitled to judicial immunity because the alleged conduct did not constitute a judicial act under New York law. *Zappin v. Cooper*, No. 16-cv-5985 (KPF), 2018 WL 708369 at *14 (S.D.N.Y. Feb. 2, 2018). The Court found that while a judge is "exempt from liability for all acts done in the exercise of his judicial function," the act of transmitting an opinion for publication in an unofficial report was "not [an act] performed by the judge in his judicial capacity..." Id. at *12. Nevertheless Cooper remained on the bench.

478. And even judges that oversaw cases involving deaths of children in proceedings that would shock the conscience—and which there is ample indisputable public evidence of judicial misconduct—the commission still allows these judges to remain on the bench; they even sit unsanctioned.

479. Woefully inadequate funding, and related inadequate skills for State appointed lawyers is a known issue in New York courts[9].

480. The Appellate Division oversight bodies for New York lawyers are widely known to grossly inadequate[10]; with New York even earning the distinction of the "third-highest number of wrongful convictions in the nation" by the Innocence Project.

481. Similar to the judicial oversight body, investigations conducted by oversight bodies for attorneys are also treated as confidential; even those persons whom submitted the complaints are not privy to the discovery, proceedings or logic behind determinations.

482. Oversight committees not only refuse to act, they intentionally create legal lacuna by returning misconduct matters under their purview to their improperly acting court officers.
   (a) Consider, a complaint C.P. Masters filed regarding Tara Diamond's willful lies to the court, and possibly felony behavior in which she repeatedly references statements by Marsha Greenberg (who was fraudulently pretending she was a licensed therapist in

---

[8] [8] https://www.nytimes.com/2022/07/11/nyregion/janet-difiore-ny-judge.html
https://www.law.com/newyorklawjournal/2022/11/14/chief-administrative-judge-lawrence-marks-who-steered-ny-courts-through-covid-announces-retirement/?slreturn=20230127122419
https://www.law360.com/articles/1470074/ny-judges-cut-public-resignation-deals-in-record-numbers

[9] https://auburnpub.com/news/state-and-regional/govt-and-politics/underpaid-and-overwhelmed-funds-for-family-court-legal-help-at-stake-in-ny-budget/article_cc81d5e3-8721-5932-9cb4-3f67d44e9895.html

[10] https://www.timesunion.com/state/article/watchdog-prosecutorial-misconduct-limbo-two-years-17775074.php

NY). Instead of investigating and disciplining Tara Diamond for her behavior, they responded circuitously the same court that a) appointed her, b) participated in her fraud, c) and was willfully obstructing proceedings on the highly substantial matter would be the body to review her fraudulent behavior.

483. Defendants and the court system overall have been notified again and again of the issues with their custom of practices outlined in this complaint, and that such practices were creating an "environment ripe for corruption and cronyism."

484. Defendants know or should have known that repeat assignments of AFCs and experts is a behavior that can easily be defined as cronyism.

485. Defendants know or should have known that appointments of AFCs and "experts" are not being tracked appropriately.

486. Defendants know or should have known that off-list appointments have zero oversight.

487. Defendants know or should have known that appointments of AFCs and "experts" is of considerable relevance since these individuals provide highly consequential services.

488. Defendants know or should have known that they had a responsibility to correct constitutional and federal violations, and inequitable applications of the law occurring in their courts by their lower court judges.

489. Defendants know and should have known they had a responsibility to uphold laws, protections and regulations that apply to State agencies in instances and persons that were acting substantially the same.

490. Defendants know or should have known that at least even basic data about complaints against judges, AFCs and experts should be public knowledge, to maintain accountability.

491. Defendants in administrative and executive duties know or should have known that at least basic information about complaints against judges, AFCs and "experts" is of considerable public relevance since these individuals provide highly consequential services; and such data needs to be readily available pursuant to either FOIL and other laws.

492. Defendants know or should have known lack of accountability is a known marker of corruption.

493. Defendants know or should have known that a lack of transparency is a marker of corruption.

494. Defendants know or should have known that gross deviation from professional standards is a marker of corruption.

495. Defendants know or should have known cronyism is a known marker of corruption.

496. Defendants know or should have know that they had taken an oath to not only avoid impropriety but also even the appearance of impropriety

497. All responsible parties take no action.

### Claim 17: Conspiracy to Interfere with Plaintiff's civil and constitutional rights

498. All named defendants maliciously participated in conspiracy to interfere with Plaintiff's civil and constitutional rights.

499. Their conspiracy unlawfully deprived me of my rights for over three years, and caused irreparable damage to my liberty (and my daughter).

500. I incorporate all of the other claims here, and state that the actions within these claims represent a custom of practice in New York's court of readily apparent abuses and violations.

501. I incorporate all of prior claims and state that this custom of practice also represent the conspiracy engaged in by all Defendants to deprive me of my rights (and the rights of others).

502. I incorporate all of prior claims above, and state that the actions in these claims, intentionally intersect, and it is the intersecting nature that comprises and enables the mechanism 0f defendants' conspiracy.

503. I incorporate all of the above and also declare that Defendants act in such gross negligence and deviation from professional standards that their acts enable and further the intentional conspiracy to deny myself and others of constitutional rights and federal protections.

504. I incorporate all of the above and state that a byzantine system of state and federal common law rulings creates an apparent legal vacuum;[11]

505. Due to this legal vacuum and the Defendants intentional and malicious gross negligence and deviation from professional standards, avenues of redress for grievances available to this Plaintiff are so deficient that such avenues are essentially voided (for myself and all others that fall into Class A parents)[12].

506. I incorporate all of the above and state that Matthew F. Cooper, Judge Ariel Chesler, Executive Officers and First Department Appellate Judges willfully and knowingly enable such an environment, and that to do so is part of the conspiracy to deprive of myself and other parents in Class A of our constitutional rights.

507. I incorporate all of the above and also declare that all named defendants act knowing that any alleged avenues of of redress for grievances are voided, in furtherance of the conspiracy to deprive myself and others of our rights.

508. As stated, it is a custom of practice in New York courts to engage in and enable a readily apparent pattern of blatant abuses and violations to exist.

509. ***It is the sheer number of violations and deprivations that are conducted blatantly by the various Defendants within my case (and many others knows to me) that supports the existence of the conspiracy. When the scale of abuses are considered as whole, it is clear the violations are flagrant, the intent to deprive is unmistakable, the disregard is intentional, and the avenues for redress are complicit and intentionally voided.***

510. This readily apparent pattern of violations has many intersecting spokes.

---

[11] The Memorandum and Order, in response to the original complaint provided by Judge Chen highlights just some of many such rulings

[12] It is inequitable to expect Pro Se litigants to navigate rulings that even legal scholars have not found appropriate resolutions for, hoping for exception that *might* protect our constitutional rights; especially as it is not clear that such an exception even exists). Therefore, as First Amendment right, I respectfully request the federal court clarify an appropriate legal claim(s) available to me to hold bad actors in the New York *courts* accountable for intentional and malicious deprivations and violations, if the claims made here are not viable.

511. It is the willful combination of these spokes that enables unethical judges, lawyers, evaluators, and abusive parents to create a veneer of legitimacy as then engage in their conspiracy to tacitly (and often even overtly as my case and several other known cases show) deprive individuals of their constitutional rights and federal protections —out of malice or personal gain.

512. It is the willful combination of these spokes that enables unethical judges, lawyers, evaluators, and abusive parents spokes is used to obscure the fact that constitutional rights are removed without legitimate cause or due process.

513. It is the willful combination of these spokes that enables unethical judges, lawyers, evaluators, and abusive parents to protect the conspiracy, since legal lacunae, inadequate oversight, and legal determinations from review bodies on a single spoke or legal issue can be used to present acts as legitimate, or in unintentional human error.

514. And it is the negligence, intentional disregard and gross breaches of duty Executive Officers and First Department Appellate Judges that enable the other defendants' custom of practice of readily apparent violations.

515. Negligence, intentional disregard and gross breaches of duty from Executive Officers and First Department Appellate Judges means they are not only complicit, but they ensure this Plaintiff and other parents in Class A do not have adequate avenues to redress our grievances.

*516. A Multi-Spoke Custom of Practice Enables Tacit Agreement.*

517. Conspiracy is by nature clandestine. I am not suggesting I have a single proof of agreement between the named defendants. Instead I have evidence that goes beyond a demonstrable conclusion that named defendants maliciously acted tacitly or explicitly together to deprive me of my rights.

518. In my case and others, such agreements includes custom of (but is not limited to):
   (a) bad actors asking for, and judges allowing fraudulent and frivolous actions that immediately removing significant custodial rights from a parent without proof of harm or requisite due process, or parent granted to the right to be present;
   (b) There is an illegitimate award of "temporary orders;"
   (c) A practice of Judges immediately granted requested "temporary orders" ex-parte or with no opportunity for defense;[13]
   (d) Not providing a requisite immediate evidentiary hearings or trial; and
   (e) repeat appointing AFCs in acts of cronyism, and allow appointment of 18B attorneys with blatant conflicts of interest, or intentionally block litigants access to counsel.

519. For example, as noted, I was fully stripped of my rights as a parent in two completely unnecessary and illegal ex-parte court appearances. Similarly I was stripped of child support, almost immediately after the case was initiated, so I faced housing instability.

520. And, multiple actions in my case demonstrate the parties agreed to support each other in such a conspiracy, including (but is not limited to):

---

[13] It is a pattern for these judges to have ex-parte, lawyer-only, off-record sessions in which significant custodial decisions, and constitutional rights are removed without Plaintiff allowed to be present.

(a) There were multiple substantial decisions unnecessarily made off-record or in chambers.
(b) The Appellate Court's willfully denied me the right to submit evidence because it would implicate Matthew F. Cooper's fraud on the court (as well as Samatha Surdi and Lisa D'Agostino in their related fraud) when he immediately stripped me of my rights with no evidence or me present.
(c) Judge Chesler and Esther Cajuste overtly obstructed a requisite expedited trial.

521. *Furtherance of the Multi-Spoke Custom of Practice is Evidence of Agreement and Intent*
522. The evidence of Agreement and Intent incorporates all lines above, and includes in my case and others know to me, customs of practice, such as (but is not limited to):
(a) lower court and appellate judges upholding unlawful "temporary orders" without clear and convincing evidence of unfit parent, any presentation of charges, and often with *zero* evidence from the favored party, the AFC or the state;
(b) judges use "temporary orders," to continue removal of custody for unreasonably protracted time periods without legitimate due process;
(c) original claims and issues to be decided are never clearly defined or heard, with instead "issues" perpetually evolve so persons can never properly defend themselves;
(d) judges ignore or obstructing evidence of their favored parent's domestic violence, coercive control, neglect and sexual abuse of a non favored parent or their children;
(e) due process is replaced by repeat-appointed AFC and/or "expert" evaluator, whom conduct unethical, constitutionally and professionally inadequate (and even illegal) "investigations" and "evaluations," outside statutory rules governing investigations and services conducted by State actors.
(f) invasive and highly consequential "investigations" and "evaluations" are discriminatingly forced upon litigants without probable cause or legitimacy;
(g) These investigations are known to be unscientific, prematurely determined and are have no established professional standard or oversight;
(h) evaluations findings that form the sole basis for significant judicial determinations, are are not accessible on the record, and Plaintiffs are inequitably told their access to it is to be restrained;
(i) supervised visits and other unnecessary restrictions are ordered with no legitimate indication of when or how such restrictions and full rights can be restored, and no clear charges or evidence brought by the State;
(j) AFCs and/or evaluators blatantly align themselves with the favored party, or align with prejudicial actions of the judge if influenced to do so, regardless of how capricious, illogical, non-factual or in violation of multiple constitutional, federal, and state statutory and common law said decisions were;
(k) Same court appointees willfully act unethically or even outright lie, and aren't required to provide any evidence or be tested for their claims.
523. I have evidence that goes beyond a demonstrable conclusion that named defendants maliciously acted together with intent (tacitly or explicitly) to deprive me of my rights. The

following a pattern of behaviors demonstrates the parties agreed to support each other in such a conspiracy, include (but is not limited to):

    (a) I was stripped of my full physical custodial rights for three years in which I was never presented with charges or evidence against me and it was never brought to trial.

    (b) I was stripped of my legal rights for 2.5 years, under a "temporary" order in which I was never presented with charges or evidence against me and it was never brought to trial.

    (c) Eric Teitel's and Matthew Cooper's falsely stating there was a "pending" evaluation even as they intentionally delayed Eric Teitel's letter to court stating he was declining to move forward with his evaluation.

    (d) The Appellate Court's assigned AFC explicitly states in his papers that Tara Diamond had aligned herself with Ryan Mack, Samantha Surdi, and Lisa D'Agostino.

    (e) Samantha Surdi, Lisa D'Agostino, Tara Diamond and Matthew F. Cooper repeatedly "corroborated" each other on claims they knew or should have known were false.

## *De Facto Termination of Various Parent Rights Are Final Overt Acts of Conspiracy*

524. The evidence of final overt acts of conspiracy, incorporates all lines above, and refers to customs of practice in my case and others know to me such as:

    (a) AFC, judges and "experts" do not make efforts to maintain family bonds, and instead work against the liberty interests of parents and children in staying together as a family.

    (b) Supervised visits and other unnecessary restrictions are implemented or maintained; with no legitimate indication of how such restrictions and full rights could be restored.

    (c) When intentional delays or overt obstructions can no longer be sustained, bench judges' use their appointees' unsubstantiated, unregulated and untested personal opinions and hearsay as the alleged "evidence" upon which the bench judge based his or her unconstitutional decisions for removal of parent's rights.

    (d) Or, such as in my case, bench judges commit fraud on the court, making unnecessary and illegitimate ex-parte decisions and other substantial violations, and write punitive, unconstitutional and unnecessary orders without even bothering to maintain an appearance of legitimacy.

    (e) Even if some level of parental rights—rights that never should have been removed in the first place—are restored, there is a significant loss of the level of original rights.

    (f) Administrative and oversight bodies fail to act, and appellate courts judges refuse to overturn unlawful and unconstitutional decisions made, without legitimate cause; in protection of others' bad behavior—on all items listed above.

525. A pattern of behaviors demonstrates Defendants engaged in overt final acts, that were a part of and designed to support each other in such a conspiracy to illegitimately deprive me of my rights, including (but is not limited to):

    (a) Matthew F Cooper wrote an order placing the case in abeyance to "await retirement."

    (b) Matthew F. Cooper and Tara Diamond went against J.M.'s then stated wish, and willfully obstructed family therapy.

(c) Judge Chesler committed fraud on the court, by obstructing me from entering the court room and ordering security to escort me out of the building, so he could falsely state I did not appear when he necessarily fully stripped me of all legal rights.

(d) The First Department Appellate Court judges misrepresented facts or outright lied in their public appeals finding.

(e) Eric Teitel refused to complete the evaluation he was ordered to conducted, but still punitively states without scientific basis, legal standing or evidence that he recommends "supervised visitation."

(f) The First Department Appellate Judges fail to act when notified that Judge Chesler was refusing a trial.

# Damages

526. All defendants have participated in publicly defaming this Plaintiff with an intentional misuse of the courts and state rules.

527. Most importantly, all Defendants, used certain Defendants' positions of authority and abuse of power as a means to grant legitimacy to their character assignation, as they:

(a) Encourage my child to falsely believe I am mentally ill;

(b) Enabled and encouraged J.M. to view me as abusive—even for utterly non-sensical or clearly untrue claims; and

(c) Obstructed opportunities and avenues available to reunite J.M. and this Plaintiff.

528. As a result of the Defendants actions' I have experienced:

(a) Reputation harm

(b) Extreme mental anguish

(c) Loss of ability to earn full income

(d) Loss of financial stability and savings

(e) Impact on job prospects

529. In addition to these readily recognizable harms, as a result of the Defendants' collective bullying, abuse of power and libel, ***they have all willfully participated in the unnecessary severing of the relationship between me and our child—a loss that for this Plaintiff is the most profound harm and denial of my liberty and pursuit of happiness. It has also caused great harm to our child.***

530. To understand the scale of mental anguish this Plaintiff has suffered, it is also important to understand how much our child deteriorated while isolated in Ryan Mack's—due to all defendants' actions (and which the Defendants' willfully ignore or lie about; while hiding behind alleged wishes of an abused child).

531. After the court unnecessarily isolated J.M with Ryan Mack, he stalked her (I have indisputable evidence); changed her phone so he could have control; removed her from her community and extracurricular activities; told her to leave and block friends on social media that might know me; encouraged her to block me and my family members; encouraged her to believe she was unsafe in her own home with me and emotionally badgered her in the small moments she was with me;

falsely disparaged me repeatedly, including in front of her to community members and her health providers; and used the court's actions to create a veneer of mistruth to our child that I was not safe and was not allowed to be around her.

532. These are CLASSIC domestic abuser moves.

533. As a result, our child went from an A student, motivated and excited to attend the Specialized high school she had won admittance to:
- (a) She began failing every class.
- (b) She became extremely truant.
- (c) She ran away from her Ryan Mack's home twice.
- (d) She threatened suicide.
- (e) She went from discussing competitive colleges that she was interested in to refusing to consider attending a college.
- (f) School counselors and teachers reported her engaging in severe self-harm of cutting.
- (g) When her high school began to monitor her behavior (and reported it to ACS), Ryan Mack pulled her out of the specialized high school with zero consult with me.
- (h) Ryan Mack moved her to a high school for kids with severe mental illness; even though J.M. did not have a mental illness prior to being isolated in Ryan Mack's care.
     This is not speculation. Our child had a number of psychologist and psychiatrist assessments before being abruptly severed from her home with the Defendant Appellant, and isolated in his care; including a psychologist and the Ackerman Institute during our divorce; a therapist that evaluated her during a debilitating illness; and a therapist she had when she refused to visit with her dad.
     Not a single mental health professional diagnosed her with a mental illness. To the contrary. They found her dealing with significant difficulties but portraying sound responses.
- (i) Due to Ryan Mack's actions (and others involved) J.M. now believes J.M. has some nebulous, incurable mental illness—with mental health providers now unwittingly participate in Ryan Mack's gaslighting, while I am silenced on this significant matter.
- (j) And without justifiable cause, J.M. went from coming home and agreeing to therapy to fiercely refusing all normative parent child interactions with this Plaintiff.

534. It is hard to describe the scale of pain of having a relationship with your child abruptly and intentionally severed; a situation the Defendants intentionally minimize and ignore.

535. Even more painful is the anguish of watching your child lose great potential, and be psychologically abused, manipulated, and deteriorate while I have been unnecessarily restrained from helping—a psychological imperative for any loving parent. This is similar to watching your child be beaten or drowned, while you are held back by others from assisting.

536. And as this abuse of myself and J.M. has occurred, Defendants' engaged in double speak in regards to their actions and deepening character assignation of this Plaintiff to avoid any responsibility for the deterioration of J.M.

537. Related, I have had the following unnecessarily stolen from me, and which can never be returned to me (or her):
- (a) The joy of the last of my child's at-home years unnecessarily stolen from me and her.

    (b) The ability to witness and participate in what should have been her success at the highly-selective school.

    (c) The ability to guide and assist in her college planning—something vital to her long-term well-being.

    (d) The ability to guide and assist in health care during a crisis—a crisis admitted to by all and my assistance was unnecessarily obstructed—something vital to her now and her long-term well-being.

## Relief Requested

538. I seek ***injunctive and declaratory relief from judges that were acting on the bench in the State cases:***

    (a) Lower Court Judges (to be collectively referred to as such going forward) in their personal and official capacity: Defendant Matthew F. Cooper (a now retired New York Supreme Court Judge); and New York Supreme Court Judge Ariel Chesler.

    (b) First Department Appellate Judges (to be collectively referred to as such going forward) their personal and official capacity: Barbra Kapnick, David Friedman, Peter Moulton, Martin Shulman, Bahaati Pitt, Sallie Manzanet-Daniels, Angela M. Mazzarelli, Lizbeth González, Martin Shulman, Julio Rodriguez III.

539. I seek injunctive, declaratory relief and ***the money damages only from the remaining other Defendants:***

    (a) Executive Officers from court administration or oversight bodies (to be collectively referred to as Executive Officers going forward) in their personal and official capacity: Janet DiFiore, Anthony Cannataro, Lawrence K Marks, Abigail Reardon, Robert J. Anello, Jorge Dopico, Jane Schreiber, Robert Tembeckjian

    (b) And all other Defendants in their personal and official capacity: Ryan Mack, Tara Diamond, Esther Cajuste, Eric Teitel, Marsha Greenberg, Lisa D'Agostino, Samantha Surdi, Tara Gore.

540. Declaratory and injunctive relief is necessary and appropriate. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein. If this Court does not grant injunctive relief sought herein, Plaintiff, and like parties will be irreparably harmed.

541. Plaintiff seeks a judicial declaration in regards of the respective rights this Plaintiff from Matthew F. Cooper, Judge Ariel Chesler, First Department Appeals Judges, and Court Executive Officers; and that same Defendants' actions, policies, and practices as alleged herein are unlawful and such practices may not continue.

542. Plaintiff seeks the relief that First Department Appeals Judges immediately remove or publicly correct their unsubstantiated defamatory claims they made about this Plaintiff.

543. In addition, damages from the Executive Officers and Ryan Mack, Tara Diamond, Samantha Surdi, Lisa D'Agostino, Eric Teitel, Marsha Greenberg, and Tara Gore are necessary to repair financial harms and provide the only available accountability for their actions.

544. Plaintiff seeks by reason of these same Defendants' unlawful actions, in an amount to be proven at trial:

  (a) For lost wages, penalties and all other compensation denied or lost to Plaintiff

  (b) For compensatory damages for Plaintiff-Intervenor's emotional pain and suffering;

  (c) For punitive damages in an amount to be determined at trial;

  (d) For liquidated damages;

  (e) For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation.

545. If any matter is to be referred back to State court, it is requested that is be heard a State other than New York, and other than a State court in the near vicinity that might be within NY Courts sphere of influence, so that a fair and impartial tribunal might be possible.

03-27-2023

6/2/2020   Gmail - Parenting   Page 62 of 63
268   https://mail.google.com/mail/u/2?ik=98729df3b&view=pt&search=...

| E1 |

M **Gmail**

b.l. masters <blmack@gmail.com>

___

**Parenting**

___

**Ryan Mack** <rmack76@gmail.com>                              Wed, May 1, 2013 at 12:05 AM
To: "b.l.mak -" <blmack@gmail.com>

So clarify things and expedite this process, here is what I think you want to negotiate regarding visitation/custody and child support and what I want.

You want it written into our agreement that:

- I don't lay in bed with ▇▇ for any reason when she is at my house

- ▇▇ changes clothes in her room or the bathroom with the door closed, and I am not allowed to go in until she is clothed when she is at my house

- Anytime she is using the toilet or shower in the bathroom, the door is closed and I am not allowed to go in until she is finished when she is at my house

- I attend therapy to deal with my personal issues

- You have custody and I have visitation

- She stays at my house one night a week and every other Friday night, and stays there until Sunday evening when I return her by 6:15 pm

- She spends two weeks with each of us in the summer

- We split major decisions like school and dental/medical

-I pay you $800 a month, plus half of ▇▇ afterschool, Paul Cabri, camps, and college (3,000 estimate? not including college)

-Could you please tell me what I am missing or if I didn't mention something you wanted in the agreement.

This is what I would like to negotiate in the agreement:

- First, I do not like the guidelines that you are so insistent on when ▇▇ comes to stay at my place written into our agreement because it makes me feel that I am a sexually perverted father found guilty of the ACS case against me, and I am forced to live my life under its shadow. That is why I don't want to agree to them. Not because I still think it is okay to give ▇▇ marriage kisses when she tells me she doesn't want them, or to kneel over her between my legs while I do prayers with her. I admit I was not listening to her requests or allowing her to have her own personal boundaries. I can guarantee that these things will never happen again, and that I am now hyper sensitive to even hugging her. However, I

NYSCEF DOC. NO. 46

https://mail.google.com/mail/u/2?ik=88f29df5bd&view=pt&search=...

RECEIVED NYSCEF: 09/08/2020

# M Gmail

b.l. masters <blmack@gmail.com>

---

## christmas???

---

**Ryan Mack** <rmack76@gmail.com>
To: barbra <blmack@gmail.com>

Thu, Oct 10, 2013 at 8:00 AM

you are overreacting again. the first night ▇▇ woke up scared and asked me to lay with her. i did. thats all. then she woke up again a couple of weeks later and i asked her if she wanted to lay with me. she said no. so i told her to go back to bed and think of all the fun times she had in mn this year and she did. that is all. nothing else. perfectly normal.

i dont like responding to your craziness and crazy accuzations.

[Quoted text hidden]